The Chicago, Rock Island and Pacific Railway Co.

*v.*

Anderson Hamler.

*Opinion filed June 23, 1905.*

1. Carriers—*when a contract releasing liability is not against public policy.* A contract of employment as porter for a sleeping car company which releases the railroad company over whose lines the cars are hauled from liability for any injury to the porter when on such lines, is not against public policy.

2. Same—*railroad company not obliged to haul cars of sleeping car company.* The duties of a railroad company as common carrier do not require it to haul cars of a sleeping car company, and it has a right, in contracting to haul such cars, to require the sleeping car company to indemnify it against liability for personal injuries received by the sleeping car company's servants.

3. Contracts—*effect where contract is not signed at time it is dated.* A contract of employment at certain daily wages, payable monthly and for no particular time, even though it is not actually signed by the employee at the time the contract is dated, is effective as to any occurrence after its execution and during the continuance of the employment.

4. Same—*failure to read a contract does not affect its validity.* Failure to read a contract before signing it does not affect its validity, where the party was able to read and write and there was no fraud or misrepresentation which prevented him from reading it.

5. Same—*when failure to prove contract is not fatal.* In an action by a sleeping car porter against a railroad company for injuries received in a sleeping car being hauled by defendant, failure of the defendant to prove its contract with the sleeping car company is not fatal, where the plaintiff's contract of employment proved by the defendant recites that the sleeping car company procured the operation of its cars on lines of railroad by means of contracts, and released from liability any railroad company hauling its cars.

6. Negligence—*gross negligence is but omission of duty.* Negligence, whether it be termed slight, ordinary or gross, is but the omission of a duty, and if actionable at all entails but one measure of liability unless the negligence was willful or intentional, in which case it assumes an entirely different character from that of negligence in its ordinary meaning.

7. Same—*when a contract is a good defense to an action for negligence.* A contract between a sleeping car company and its servant whereby the latter released from liability for negligence any railroad company hauling the sleeping cars, is a good defense to an action by him against the railroad company for any negligence occasioning his injury while discharging his duties as the servant of the sleeping car company, short of willful or intentional negligence.

8. Same—*unexplained boiler explosion raises no presumption of willful negligence.* An unexplained explosion of the boiler of a locomotive does not raise a presumption that the servants in charge of the locomotive, who lost their lives as a result of the explosion, were guilty of willful or intentional disregard of duty.

9. Master and servant—*right to give orders is essential to the relation of master.* A porter employed and paid by a sleeping car company is not a servant of the railroad company hauling the car of which he is in charge, where he is not subject to the orders of the railroad company in any particular.

Magruder, J., dissenting.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

W. T. Rankin, and Benjamin S. Cable, for appellant.

George E. Dickson, and Castle, Williams & Smith, (Ben M. Smith, of counsel,) for appellee.

Mr. Chief Justice Cartwright delivered the opinion of the court:

On January 18, 1902, Anderson Hamler, the appellee, was a porter in the employ of the Pullman company in a sleeping car attached to a passenger train of appellant running in a westerly direction in the State of Iowa. As the

train passed through a station called Victor the engine exploded. The engineer and fireman were killed and the Pullman sleeping car in which appellee was at work was thrown on its side and he was injured. He brought this suit in the circuit court of Cook county to recover damages for his injuries, and alleged in each count of his declaration that he was employed by the Pullman company as a porter; that his duties were the care of the sleeping car, the making up and taking down of berths therein and providing for the necessities and comforts of passengers, and that he was, with all due care and diligence, performing his duties as such porter when the car was thrown from the track. In the first count he charged negligent, careless and wrongful management and operation of the boiler which exploded and threw the car from the track. In the second count he alleged that the engine was negligently, carelessly and wrongfully equipped with a defective boiler, and the third count contained a general charge of the negligent operation of the train, causing the car to be thrown from the track. There was a plea of the general issue, and upon a trial there was a verdict of guilty and damages were assessed at $15,000. On a motion for a new trial plaintiff remitted $7500 and judgment was entered for $7500. Appellant appealed from the judgment to the Appellate Court for the First District, where the cause was assigned to the branch of that court. One of the judges of the branch court presided at the trial in the circuit court and took no part in the consideration of the appeal, and the other judges disagreeing, the judgment was affirmed by operation of law. One of the judges was disqualified and the judgment became final as to controverted questions of fact by operation of law, and not by consideration and judgment of the court.

On the trial the defendant offered in evidence a contract of employment with the Pullman company, dated January 2, 1902, signed by the plaintiff, the execution of which was admitted by him and which fixed the terms and conditions up-

on which he accepted the employment and entered into the service of said company. Among other things, the contract recited that plaintiff was aware that the Pullman company secured the operation of its cars upon lines of railroad by means of contracts wherein said company agreed to indemnify the corporations or persons owning or controlling such lines of railroad against liability on their part to the employees of said Pullman company, and he thereby released the corporations or persons over whose lines of railroad the cars of said Pullman company might be operated, from all claims for liability on account of any personal injury to him while traveling over such lines in said employment or service. This contract was the basis of the defense to the suit, and the defendant tendered to the court an instruction to be given to the jury, that the defendant was not a common carrier of the sleeping cars of the Pullman company; that it could not be compelled to haul such sleeping cars, but might or might not haul the same, as it desired; that if it undertook to haul such cars in its trains it might do so, and in so doing might make such contract or demand such conditions as would protect it from liability for injury to the porter or other employees of the Pullman company on the said cars through negligence, and that if the plaintiff voluntarily entered into the agreement releasing the railroad company from all liability for any injury he might receive while acting as a Pullman porter he could not recover, and the verdict should be that the defendant was not guilty. The court refused to give the instruction.

The principle involved and the rights of the parties under such a contract as this were considered and decided in *Blank* v. *Illinois Central Railroad Co.* 182 Ill. 332, which was an action brought by an employee of the American Express Company for personal injuries received while engaged in the service of that company in an express car. The defense was a contract made by the plaintiff with the express company to obtain employment, by which he released from any liabil-

ity to him any corporation operating any railroad over which the express cars should run. It was decided that such a contract is valid and not void as against public policy, and that the direction of the court to find the defendant not guilty was justified by the contract, which was a complete defense. There is no difference whatever, in principle, between the case of a porter on a car of the Pullman company and a messenger in an express car. It is no part of the contract or obligation of a common carrier of passengers to furnish berths, or the services of a porter to make up beds or perform other services for passengers. The passenger pays the Pullman company for the services performed by it, and not the railroad company, and if one desires such services as are rendered by the Pullman company and its porter he must contract with that company for them. In its business as a common carrier of passengers a railroad company is bound to carry all who apply and to treat all alike, and its duties and obligations to them are imposed by law. The obligations of a common carrier arise from the public nature of the employment, and being imposed by law, it would be against public policy to allow the obligations so imposed to be changed by a contract exempting the carrier from the consequences of negligence in the employment. A railroad company, in its business as a common carrier, undertakes to use the care and diligence required by law in the transportation of passengers, and will not be permitted to absolve itself from its duties by a stipulation in the contract of carriage by which a passenger is to take the risk of its negligence; but if the service is one that is not imposed upon it as a duty, it may undertake it upon such terms as it may see fit. There can be no doubt that the defendant is not bound to haul sleeping cars tendered to it by the Pullman company, with its conductors, porters or other employees. The defendant is a common carrier of passengers, and as to them it assumes the duties and liabilities of a common carrier, but the Pullman company furnishes special facilities and services to passengers, and the

defendant is not a common carrier of Pullman cars and employees performing duties therein. The defendant might undertake to receive and haul the cars of the Pullman company, but in doing so had a right to impose such terms as it might elect. This has been the opinion of the courts in all cases involving such contracts as the one here in question, which have been enforced in cases of express cars, circus trains and Pullman cars, which the carrier was not bound to receive and haul as a common carrier. (*Bates* v. *Old Colony Railroad Co.* 147 Mass. 255; *Hosmer* v. *Old Colony Railroad Co.* 156 id. 506; *Louisville, New Albany and Chicago Railroad Co.* v. *Keefer,* 146 Ind. 21; *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Mahoney,* 148 id. 196; *Robertson* v. *Old Colony Railroad Co.* 156 Mass. 526; *Griswold* v. *New York and New England Railroad Co.* 53 Conn. 371; *Coup* v. *Railroad Co.* 56 Mich. 1; *Express cases,* 117 U. S. 1; *Peterson* v. *Chicago and Northwestern Railway Co.* 96 N. W. Rep. 532; *Donovan* v. *Pennsylvania Co.* 120 Fed. Rep. 215; *New York and Hudson River Railroad Co.* v. *Difendaffer,* 125 id. 893; *McDermon* v. *Southern Pacific Railway Co.* 122 id. 669.) In the last two of these cases the validity of the contract with the Pullman company was involved. In the case of *Blank* v. *Illinois Central Railroad Co. supra,* appellant relied upon the decision of Judge Taft in *Voigt* v. *Baltimore and Ohio Southwestern Railway Co.* 79 Fed. Rep. 561, but that decision was reversed by the Supreme Court of the United States in *Baltimore and Ohio Southwestern Railway Co.* v. *Voigt,* 176 U. S. 498, where it was held that Voigt could not avoid his agreement on the ground that it was against public policy. The court, affirming the doctrine that a common carrier of passengers cannot lawfully stipulate for exemption from responsibility for the negligence of himself or his servants, said: "At the same time it must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function

of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare." Upon an extensive review of the authorities it was decided that the contract was not against public policy, but was valid and constituted a defense to the action.

It is urged, however, that the contract in this case was without consideration, and was therefore void. Upon the cross-examination of the plaintiff he was presented with the contract and admitted that he signed it. It bore date at the time of his employment by the Pullman company, but after it was introduced in evidence by the defendant he was called in rebuttal and testified that it was executed by him about seven months after he was employed by the Pullman company, and that he did not read it. It is on the ground that the contract was executed after the employment began that counsel urge it was without consideration. There was evidence that the contract was signed before employment was given to the plaintiff; but whatever the fact may be, the employment was at certain daily wages, payable monthly, and for no particular time. The contract bore date at the commencement of the service, and recited on its face that it was entered into in consideration of the employment. If it was signed as he claimed and the employment continued, it would be, in any event, effective as to any occurrence after its execution. It does not seem to be claimed that plaintiff was not bound by the contract because he did not choose to read it. He testified that he was able to read and write, and there was no evidence of fraud or misrepresentation or that he was in any manner prevented from reading the contract. Under such circumstances the fact that he did not read it does not affect its validity.

It is contended that plaintiff was a servant of the defendant, and that the contract was also void as a contract between master and servant. The declaration averred that the

plaintiff was in the employ of the Pullman company, and, as a question of fact, the uncontradicted evidence was that the Pullman company owned the car and had charge of its operation; that it employed the men who ran its cars, paid the porters, and that the defendant paid a compensation to the Pullman company for running the Pullman cars over its road. The master of a servant is one to whose order he is subject, and the plaintiff was not subject to the order of the defendant in any particular and therefore was not its servant. Under this head it is also urged that no contract was proved between the defendant and the Pullman company. Plaintiff's contract recited that the Pullman company secured the operation of its cars on lines of railroad by means of contracts, and it released from liability any corporation over whose lines the cars should run. In *Russell* v. *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* 61 N. E. Rep. 678, in which a contract identical with this one was under consideration, the Supreme Court of Indiana held that the contract, referring, generally, to the transportation companies over whose lines the Pullman company should run its cars, comprehended the appellee in that case; that the contract was *prima facie* for its benefit, and that it would be presumed to have accepted its provisions and might claim rights under it as one in whose interest it was executed.

Finally, it is contended that a contract of this character only exempts from liability for ordinary negligence, and is no defense in an action for an injury caused by gross negligence. It is contended that if the degree of negligence is high and the negligence great the agreement is of no effect, and the trial court adopted that view in giving instructions to the jury. In the first instruction the court defined gross negligence as the want of slight diligence and care, and in other instructions told the jury that if the plaintiff was not guilty of negligence and the defendant was guilty of gross negligence they should find for the plaintiff, and that if the contract in evidence was signed by the plaintiff and he was

not guilty of negligence and the defendant was guilty of
gross negligence causing the injury, the contract was not a
good defense and they should find for the plaintiff. The
cause of the explosion was not definitely proved, but there
was evidence that tended to show that the water was low
in the boiler. The engineer and fireman were both killed,
and it can never be known whether they were misled on ac-
count of the water gauge or other appliances not working
properly. There was no evidence tending in the remotest
degree to prove that there was any willful or intentional
failure on the part of either of them to perform any duty
respecting the boiler or the management of it. Their own
safety was involved, and there can be no presumption that
they lost their lives through a willful or intentional disre-
gard of duty.

We are of the opinion that no distinction as to the rights
of the parties can be founded upon speculation as to different
degrees of mere negligence, and that the trial court erred in
instructing the jury to find for the plaintiff if they concluded
that the defendant was guilty of gross negligence. Formerly,
this court, in expounding the doctrine of comparative neg-
ligence, classified negligence into three degrees, as slight, or-
dinary and gross; but that doctrine was long ago abolished,
and while negligence may since that time have been alluded
to in opinions as gross or slight, no weight has been given to
the question and no liability has been based on any distinc-
tion in degrees unless the negligence was willful or inten-
tional, where it assumes an entirely different character from
that of negligence in its ordinary meaning. In negligence,
merely, there is no intention to do a wrongful act or omit the
performance of a duty. (*Chicago, Burlington and Quincy
Railroad Co.* v. *Johnson,* 103 Ill. 512.) Even when gross it
is but the omission of a duty. (*Jacksonville Southeastern
Railway Co.* v. *Southworth,* 135 Ill. 250.) The many re-
finements concerning the degrees of such omissions of duty
grew out of the application of the rule of comparative negli-

gence, and were divested of all importance by the decision that to justify a recovery the person injured must be in the exercise of ordinary care and the injury must have resulted from a want of ordinary care on the part of the defendant. (*Calumet Iron and Steel Co.* v. *Martin,* 115 Ill. 358.) The rule since that time has been, that if a plaintiff has exercised ordinary care and the defendant has failed to exercise due care,—*i. e.,* the care demanded under the circumstances,— the rights of the parties are thereby fixed and determined and there is an end of controversy. If those conditions exist there is actionable or culpable negligence, which will justify a recovery of damages resulting therefrom,—and it makes no difference in the liability or the damages by what name the negligence is designated. Where an injury results from a failure to exercise ordinary care and not from a willful or intentional failure to perform a duty, the question of degree is of no importance. Speculations on that subject lead to no practical result, as shown by the various cases, among which is *Lake Shore and Michigan Southern Railway Co.* v. *Hessions,* 150 Ill. 546, where it was said that slight negligence is not necessarily incompatible with due and ordinary care, and inasmuch as there is no negligence unless there is a failure to exercise due care, which is the care required by law under the circumstances of a case, the remark was equivalent to holding that slight negligence was not negligence at all. .

Where the doctrine of comparative negligence is not applied the authorities make no distinction in rights, duties or liabilities based on degrees of negligence. Judge Cooley, in his work on Torts, (p. 630,) says: "Some writers classify negligence as gross negligence, ordinary negligence and slight negligence. But this division only indicates this: that under the special circumstances great care and caution were required, or only ordinary care, or only slight care. If the care demanded was not exercised the case is one of negligence, and a legal liability is made out when the failure is shown." Judge Thompson classifies negligence as of two

kinds: negligence, which consists of carelessness and inattention, and willful negligence, consisting of willful and intentional failure or neglect to perform a duty; and he repudiates any further classification. He says (1 Thompson on Negligence, sec. 18): "Lord Holt, C. J., in a celebrated case divided diligence into three degrees: slight, ordinary and gross. In this he is supposed to have made an attempt to follow the Roman law; but later investigators have pointed out that *culpa levissima,* or slight negligence, was unknown to the Roman law, but was one of the refinements of the middle ages. I confess myself careless, ignorant and indifferent upon this whole subject of the degrees of negligence. It is plain that such refinements can have no useful place in the practical administration of justice. Negligence cannot be divided into three compartments by mathematical lines. Ordinary jurors, before whom, except in cases in admiralty, actions grounded on negligence are always tried, are quite incapable of understanding such refinements. * * * No effort can extract from the current American decisions the conclusion that there are three degrees of culpable negligence: slight, ordinary and gross. On the one hand, it has been held that slight negligence may be compatible with ordinary care, and therefore not actionable at all. On the other hand, it has been laid down that there is no distinction between gross negligence and the want of ordinary care. * * * If the care demanded is not exercised the case is one of negligence, and the legal liability is made out when the failure is shown." The author of the chapter on Negligence in the American and English Encyclopedia of Law, (2d ed. vol. 21, p. 459,) says: "While not infrequent references are still found in judicial discussions of the subject to the classification of negligence into degrees, the tendency of modern authority and the weight of the best considered cases are now opposed to this view, holding that in every case negligence, however described, is merely a failure to bestow the care and skill which the situation demands, and hence it is more accu-

rate to call it simply negligence. Some decisions even go further, and declare that the classification of negligence into degrees is a matter of pure speculation and of no practical consequence; that it is useless and tends to confusion, and that, in fact, it is unsafe to base any legal decisions on distinctions in the degrees of negligence."

One of the reasons given by the courts for disregarding supposed distinctions in degrees of negligence is the inability to give the terms "slight," "ordinary" and "gross" any definite meaning and the impracticability of applying any rule based on the supposed distinction. It is clear that negligence cannot be divided into slight, ordinary and gross by definite lines, so that a jury may understand the limits of each and assign each case to its own department. In *Hinton* v. *Dibbin,* 42 Eng. C. L. 847, Lord Denman said: "Again, when we find 'gross negligence' made the criterion to determine the liability of a carrier who has given the usual notice, it might perhaps have been reasonably expected that something like a definite meaning might have been given to the expression. It is believed, however, that in none of the numerous cases upon this subject is any such attempt made, and it may well be doubted whether between 'gross negligence' and negligence, merely, any intelligible distinction exists."

In *Steamboat New World* v. *King,* 16 How. 469, it was said: "The theory that there are three degrees of negligence described by the terms 'slight,' 'ordinary' and 'gross' has been introduced into the common law from some of the commentators on the Roman law. It may be doubted if these terms can be usefully applied in practice. Their meaning is not fixed or capable of being so. * * * Recently the judges of several courts have expressed their disapprobation of these attempts to fix the degrees of diligence by legal definitions and have complained of the impracticability of applying them. * * * It may be added that some of the ablest commentators on the Roman law and the civil code of France have wholly repudiated this theory of three degrees

of diligence as unfounded in principles of natural justice, useless in practice and presenting inextricable embarrassments and difficulties."

In *Perkins* v. *New York Central Railroad Co.* 24 N. Y. 196, the court of appeals said: "The difficulty of defining gross negligence, and the intrinsic uncertainty pertaining to the question as one of law, and the utter impracticability of establishing any precise rule on the subject, renders it unsafe to base any legal decision on distinctions of the degrees of negligence. Certainly, before cases are made to turn, by verdicts of juries, upon any such distinction, the judges should be able to define with some precision what they mean by gross negligence, slight negligence and ordinary negligence. It will be seen, on examining the many cases reported where the question has arisen, that this has been found utterly impracticable by judges when called upon to instruct juries upon the question and also when called on to declare the law more carefully in bank. * * * What is negligent in a given case may easily be affirmed by a jury, but in what degree the negligence consists in any scale of classification of degrees of negligence is not so easily determined, will ordinarily be a matter of pure speculation and of no practical consequence."

In *Wilson* v. *Brett,* 11 Meeson & Welsby, 113, it was held that there is no legal difference between negligence and gross negligence; that it is the same thing with the addition of a vituperative epithet, and that the question in any case is whether there was culpable negligence.

In *Grill* v. *General Iron Screw Collier Co.* 1 Com. P. 600, it was complained that the Lord Chief Justice misdirected the jury because he made no distinction between gross and ordinary negligence. In deciding the case Willes, J., said: "I quite agree with the dictum of Lord Cranworth in *Wilson* v. *Brett,* that gross negligence is ordinary negligence with a vituperative epithet,—a view held by the Exchequer Chamber. (*Beal* v. *South Devon Railway Co.*) Confusion has

arisen from regarding negligence as a positive, instead of a negative, word. It is really the absence of such care as it was the duty of the defendant to use."

In the case of *Beal* v. *South Devon Railway Co.* 3 H. & C. 336, above referred to, the failure to exercise reasonable care, skill and diligence was called gross negligence, although it would be called ordinary negligence under most definitions where there is any division into degrees.

It will be found that the words "slight," "ordinary" and "gross," as applied to negligence, are not used in the decisions with the same meaning or any definite and well understood meaning. Illustrations are numerous, but a few will suffice for the present purpose. The words "gross negligence" are often used as the antithesis of "slight care," but in many relations the law only requires the exercise of slight care, and the failure to exercise it cannot be different in degree from the failure to exercise a very high degree of care where it is demanded by the law. The absurdity of such a standard for determining supposed degrees of negligence is manifest. It has been noted that slight negligence is not regarded as inconsistent with due care, and if due care is exercised there is no actionable negligence, and therefore, in a legal sense, no negligence at all. In *Bloor* v. *Town of Delafield,* 69 Wis. 273, it was held that a slight want of ordinary care on the part of the plaintiff contributing proximately to cause the injury would defeat his action, while only slight negligence on his part contributing thereto would not. The Supreme Court of Wisconsin also holds that no mere degree of carelessness or inadvertence constitutes gross negligence, (*Decker* v. *McSorley,* 116 Wis. 643,) and that the term "gross negligence" signifies willfulness, involving intent, actual or constructive, to cause injury, and if one is guilty of willful misconduct causing injury to another the former's fault is denominated gross negligence. (*Rideout* v. *Winnebago Traction Co.* 101 N. W. Rep. 672.) In *C., M. & B. R. R. Co.* v. *Crocker,* 95 Ala. 412, the court

drew a distinction between negligence charged to be reckless and a willful and wanton injury, and in *Stringer* v. *Alabama Mineral Railroad Co.* 99 Ala. 397, it was said: "The words 'gross,' 'reckless,' when applied to negligence *per se,* have no legal significance which imports other than simple negligence or a want of due care." The court recognized but two grades of negligence, one being simple negligence or the want of due care, and the other such reckless or wanton disregard of probable consequences as to be equivalent to an intentional injury, and expressed doubt whether the latter could be strictly and technically called negligence,—certainly a well founded doubt. In *McAdoo* v. *Richmond and Danville Railroad Co.* 105 N. C. 140, it was held that in torts there is no degree of negligence which can be described by the word "gross" alone. In *Milwaukee and St. Paul Railroad Co.* v. *Arms,* 91 U. S. 489, the court, after citing and quoting from the English decisions holding that there is no intelligible distinction between ordinary and gross negligence, said: "Gross negligence is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence,' but after all it means the absence of care that was necessary under the circumstances." In *Smith* v. *New York Central Railroad Co.* 24 N. Y. 222, it was said: "Attempts have been made to fix a liability upon the distinction between gross negligence and negligence merely, but courts have been compelled to abandon the attempt, and to say that negligence does not change its character and become anything but negligence by the application of any epithet to it."

The United States Circuit Court of Appeals for the seventh circuit considered the same question involved in this case in *Kelly* v. *Malott,* at the October term, 1904. The suit was for damages on account of the death of a messenger of the Adams Express Company, and the declaration charged that he was killed in a collision that occurred through the gross negligence of the defendant. A contract similar to the one in this case was pleaded, and the question was whether the in-

jection of the word "gross" in the declaration made out a case despite the plea. The court said: "It seems to us that the whole attempt to classify negligence has resulted from a misapprehension. 'Negligence' is merely a word of denial. 'Care' is the positive word. It is familiar and sound doctrine that there are degrees of care. But 'care' cannot properly be divided into abstract and absolute classes. The quantum of care required in a particular case is determined from the relations of the parties and the facts of the situation, and is proportionate to the danger reasonably to be apprehended. Whatever the required degree of care, the failure to measure up to it is the ground of complaint. But failure is failure. The cause of action flows from the failure to exercise the full degree of care that was due. The injuries are what they are. The innocent sufferer is entitled to full compensation on account of the defendant's failure to bestow the fullness of care demanded by the situation. He is to receive no more, no less, than full compensation, because, though the defendant's lack may be a variable, any lack supplies a cause of action, and his injuries, which measure the value of the cause of action, are a constant. The division of negligence into slight, ordinary and gross may have originated in an endeavor, unconscious perhaps, to justify exemplary damages where only compensative should be allowed. One who unintentionally fails in his duty and thereby causes an injury should make complete compensation. But to warrant punishment there must be an actual or constructive intent to inflict the injury. Negligence and willfulness are as unmixable as oil and water. 'Willful negligence' is as self-contradictory as 'guilty innocence.' The substantive remains the same substantive, whatever the adjective. In *Railroad Co.* v. *Lockwood*, 17 Wall. 357, the Supreme Court said: 'In each case the negligence, whatever epithet we give it, is failure to bestow the care and skill which the situation demands, and hence it is more strictly accurate, perhaps, to call it simply 'negligence.' And this seems to be the tendency of modern

authorities. * * * In the case before us, the law, in the absence of special contract, fixes the degree of care and diligence due from the railroad company to the persons carried on its trains. A failure to exercise such care and diligence is negligence. It needs no epithet properly and legally to describe it.'—See, also, *Milwaukee, etc. Railway Co.* v. *Arms,* 91 U. S. 489, 492; *Purple* v. *Union Pacific Railroad Co.* 114 Fed. Rep. 123."

Whether the use of the word "willful" negligence is proper and consistent or not, there can be no doubt that it is not equivalent to gross negligence, and the question whether exemplary damages shall be awarded does not justify any classification into degrees, since negligence, however gross, will not authorize such damages. A tort must be aggravated by an evil intent to enable a party to recover exemplary damages. (*Milwaukee and St. Paul Railway Co.* v. *Arms, supra.*) The only question in any case is whether there is actionable negligence, and if there is, the authorities establish the proposition that the rights of the parties are not affected by any question of the degree of such negligence. The instructions that the contract was not a good defense in case the jury found the defendant guilty of gross negligence were incorrect and should not have been given.

At the close of all the evidence there was a motion on the part of the defendant to direct a verdict of not guilty. The court denied the motion and refused to give the instruction. Under the authority of *Blank* v. *Illinois Central Railroad Co. supra,* that instruction should have been given.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

Mr. Justice Magruder, dissenting.