## W. U. Halbert, Adm'r etc., Appellee, v. Illinois Central Railroad Company, Appellant.

1. PERSONAL INJURIES—*obligation of railroad to trespassers.* A railroad owes no duty to a person walking upon its tracks as a trespasser except to avoid wilfully injuring him and to use reasonable care to avoid injuring him after he is discovered to be in peril.

2. VERDICTS—*when set aside as against the evidence.* A verdict when clearly and manifestly against the evidence will be set aside on review.

Action in case for death caused by alleged wrongful act. Appeal from the City Court of East St. Louis; the HON. M. MILLARD, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed March 21, 1912.

KRAMER, KRAMER & CAMPBELL, for appellant; JOHN G. DRENNAN, of counsel.

JOHN S. LEAHY and D. J. SULLIVAN, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This was an action instituted by appellee to recover judgment on account of the death of John Lada, in

which the jury returned a verdict in favor of the appellee for $2000 against the appellant, upon which judgment was rendered; to reverse which this appeal is prosecuted.

The facts in this case are, that on or about May 10, 1910, the appellee was possessed of and operating a railroad through the city of East St. Louis, Illinois; that in the operation of its road it used three tracks extending practically north and south through the southerly portion of the city of East St. Louis,—the easterly track is known as its "inbound main" and the track just west of this one is known as the "outbound main," and a short distance west of the "outbound main" it operates a switch track known as the "third rail," with a cross-over leading from this "third rail" to the "out-bound main." The railroad crosses Trendley avenue and 6th street, and the tracks of appellant in passing from 6th street to Trendley avenue are on a curve, the concave side being towards the east. At the time of the injury the deceased was a boy of the age of nine years and lived in the vicinity of the railroad, and just prior to his injury was walking on the third rail and towards the east. There was a switch engine passing along the third rail north of the place of the accident; the engine was backing towards the south, the tank of the engine being in front, and was pulling a cut of twelve or fifteen freight cars and running at the rate of about three miles an hour. At the time this switch engine was about eighty feet north of where the boy was killed, and just as the engine passed from the third rail on to the cross-over, the engineer signalled the boy with the whistle of the engine, and continued to give short blasts of the engine whistle until he came near to where deceased was standing, and during this time the boy passed over the cross-over and over the out-bound main to a point between the inbound and the out-bound main tracks where he stop-

ped, and when Briggs, the engineer, in charge of the switch engine was about 35 or 40 feet north of deceased he discovered a passenger train, No. 202, coming north on the in-bound main in charge of engineer Mulconnery. The engineer was in his position on the right hand side of the engine, which would be the concave side of the curved track, and the opposite side from where the deceased was standing. The engineer Mulconnery first discovered the deceased when about 150 feet south of him, at which time he testifies he sounded the whistle to attract the attention of the boy and that immediately thereafter and when the passenger engine was within about seventy-five feet of the deceased, he says he saw the boy take one step towards the west and away from the track upon which his engine was being operated; this was at the distance of about 75 feet from the deceased, and from that time the engineer was unable, on account of his position and the length of the engine, to see the boy any more; he thinks the boy at that time was about five feet from his track. And according to the testimony of other witnesses the boy afterwards moved to the east and was struck by the passenger engine and killed.

It is claimed by appellee that the deceased was in a dangerous position and that this was known or should have been known to the engineer and fireman operating the passenger engine and that they recklessly and wantonly drove the passenger train upon and against the deceased after his presence on and in dangerous proximity to the said track was known to the engineer and fireman in time to have avoided injuring him. In other words, the engineer who was operating this train is charged with having wantonly and recklessly killed the deceased.

We think the law governing this case is well settled and that the difference, if any exists, is in the application of the law to the facts. In fact there seems to be

no real controversy between counsel as to the law governing the case. It is stated by counsel for appellant that the railroad company owes no duty to a person walking upon its tracks as a trespasser, except to avoid wilfully injuring him and to use reasonable care to avoid injuring him, if he is discovered to be in peril. And counsel for appellee says that his declaration is based upon the last clause of this proposition and that the liability charged against the defendant is the reckless conduct of the engineer after becoming aware of the perilous position occupied by the deceased. That the deceased was a trespasser there is no question, and the railroad company owes no duty to a person walking upon its tracks as a trespasser, except to avoid wilfully injuring him and to use reasonable care to avoid injuring him after he is discovered to be in peril. I. C. R. R. Co. v. Leiner, 202 Ill. 624; C. R. I. & P. R. R. Co. v. Hamler, 215 Ill. 525.

This legal proposition is not denied but it is insisted that the boy was in a perilous position and that the engineer on the passenger train was guilty of wanton and reckless conduct in not observing that he was in a perilous position and in not making some effort to stop his train. We have examined the evidence carefully and do not find that it discloses the deceased to have been in a perilous position at the time the engineer on the passenger train saw him, or had an opportunity to see him, and do not think that the jury was warranted by the evidence in saying that the engineer knew that the boy was in a perilous position at any time. The testimony upon this question is confined to three witnesses, Mulconnery, the engineer on the passenger train, Briggs, the engineer upon the switch engine, and Conroy, the assistant yard master. Briggs says, "When I started through the cross-over and I first blew the whistle at him he paused a moment and looked at me and then stepped over going eastward

until he got over the cross-over and over the south bound track until he stepped between the two tracks; I was backing up and when I realized that No. 202, the evening passenger train was approaching I realized that the boy was in danger and I blew continuous short blasts of the whistle to attract his attention. If he had stayed there he would have been in the clear. As I got up to him I saw 202 approaching him. I had not stopped blowing continuous blasts of the whistle. As I was right at him almost, I stopped blowing the whistle and hallooed at the boy and pointed my hand that way (illustrating) to try to divert his attention to the approaching train, and he was still in the clear of the north bound track then; but as 202 approached and got within ten or fifteen feet of him he took another step over sideways towards the north bound track and that put him in the way and in a moment 202 struck him.'' (Abs. 5). And on cross-examination this witness says, ''Afterwards I saw him take a step over towards the engine of the in-coming train; the engine could not have been over seventy-five feet from him when he took that step. He stepped in front of the engine; if he had not taken that step he would not have been hit. Mulconnery was over on the other side of the engine from the place where the boy was standing. At the time he took the step it was not possible for Mulconnery to see him at that time owing to the length of the boiler of his engine and the short curvature of the track.'' (Abs. 7).

Conroy testifies, ''As our engine came up even with the boy I was just getting on the west side; as our foot board was passing the boy the other car was a car length from him; I just stepped around on the other side; I didn't want to see him get killed; he looked to me he was in the clear. If he was killed I didn't want to see it.'' (Abs. 9). Again he says, on cross-examination, ''I was looking back at my cut of cars

to see that we had them all and I turned around the second time; he was over between the two tracks. He was standing still looking at Briggs; I thought he was in the clear; that is the reason I did not halloo any more; I thought he was in a safe place. He must have moved or something after we got by." (Abs. 10). Mulconnery, the engineer on the passenger train, says, "When I first saw Johnny Lada that evening I judge my engine was about 150 feet south of him. At that time he was coming across the track from the south bound in-track towards our track." And on cross-examination he says, "As he come across the track he dropped something; he stopped to pick it up; he was within about five feet of our track; he stopped when he got there. When I last saw him he turned and started the other way, away from our track. I was then about seventy-five feet from him. I didn't see him after that. I would judge he was about five feet from our track when he stopped. After he stopped and stooped to pick something up he turned and started the other way when I blew the whistle at him he stepped towards the west from our track." (Abs. 11).

This was the testimony of the witnesses for the plaintiff, and if it is to be relied upon, and it must be as it is the only evidence in this case, then we do not believe that the jury was warranted in saying that when Mulconnery last saw the deceased that he was in a place of peril because all of these witnesses say if he had remained where he was he would have been in no danger, and Briggs says that at the time he left his position of safety and moved toward the east track that it was not possible for the engineer Mulconnery to have seen him; besides Mulconnery says he did not see the switch engine at all and did not know of its presence. It devolved upon the plaintiff to show that the deceased was in a perilous position, and that the engineer Mulconnery knew that, or at least by reasonable diligence

could have known it, and we are satisfied that the evidence fails to disclose such a condition.

Again, it is claimed that the Court erred in giving appellee's second instruction which is as follows: "The court instructs the jury that even though the deceased was wrongfully on or along defendant's tracks, still it was the duty of defendant's servants to use reasonable care to avoid injuring him after becoming aware of his presence." We think the criticism upon this instruction is well taken as the instruction requires of the engineer to use the care towards a trespasser that is not required by the law. It is said that he must use care to avoid injuring him "after becoming aware of his presence." If the instruction had said, "after becoming aware of his peril," if he was in peril, then it would have been correct, but the instruction ignores the question of his being in peril. It is true, as contended by counsel for appellee, that under some circumstances the mere presence of people would require care on account of their presence in numbers but such has no application to the facts in this case. Here was a single individual and in between the tracks apparently out of danger, and to instruct the jury that his presence, without reference to his perilous position, required any special care upon the part of the engineer was certainly erroneous, and we think the giving of this instruction was reversible error. Believing that the instruction is erroneous and that the verdict is manifestly against the weight of the evidence, it is the opinion of this court that the judgment rendered herein should be reversed and the cause remanded.

*Reversed and remanded.*