**GATELY v. CHICAGO & E. I. R. CO.**

**No. 8246.**

Circuit Court of Appeals, Seventh Circuit.

Oct. 26, 1943.

Edward W. Rawlins, James F. Wright, and T. N. Cook, all of Chicago, Ill. (Fay Warren Johnson, of Chicago, Ill., of counsel), for appellant.

H. H. Patterson, of Chicago, Ill. (Edmund C. Maurer, of Chicago, Ill., of counsel), for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from a judgment in favor of the plaintiff in an action for damages resulting from personal injuries sustained January 29, 1940. Plaintiff was a switchman in the employ of the Wabash Railroad Company, and the injuries complained of were received when he was struck by defendant's switch engine, operating in the Danville Junction near Danville, Illinois.

The case was tried to a jury, upon a complaint which charged the defendant with certain acts of negligence and which alleged that plaintiff was in the exercise of due care and caution for his own safety. At the conclusion of the evidence, plaintiff, by leave of the court, filed an additional paragraph to his complaint, charging defendant with wilful and wanton conduct. Defendant answered this additional paragraph, denying such charge and alleging that plaintiff, at and immediately prior to the time of the accident, acted with a conscious and wilful disregard of his own safety.

The sole contention on this appeal is that the trial court erred in its refusal to direct a verdict for the defendant. Four propositions are argued in support of this contention, namely, (1) there was no substantial proof of defendant's negligence; (2) there was no proof that plaintiff was in the exercise of due care and caution for his own safety, or, in other words, that he was free from contributory negligence; (3) there was no proof of wilful and wanton conduct on the part of the defendant; and (4) even so, plaintiff acted with conscious and wilful disregard of his own safety, thereby contributing to the injuries complained of.

At the place of the accident, the Wabash has two main lines extending north and south. Defendant has a single line also extending north and south, substantially parallel with the Wabash tracks, with a space of about thirty feet between its track and the westerly track of the Wabash. Within the Junction, the Big Four has a track extending east and west and intersecting those of the Wabash and the defendant. The three railroads jointly maintain a signalman near the point of intersection. South of the intersection is a semaphore operated by the signalman so as to indicate to crews of approaching

trains when they may cross the intersection. There is also located south of the intersection a stop sign, and it is the duty of an approaching train to stop until the clear signal is indicated by the semaphore. Some distance north of the intersection the Wabash has a transfer track, used to deliver and receive cars from the Big Four, which crosses defendant's track.

On the day of the accident, the Wabash was moving a train of sixteen cars on its westerly track and in a northerly direction, for the purpose of delivering them to the Big Four by way of the transfer track. The engine pulling this train of cars was operating in reverse. As it approached the intersection, there was also approaching and traveling in the same direction an engine on the track of the defendant, which was also operating in reverse and engaging in switching operations.

Both the Wabash train and the defendant's engine were manned by the usual switching crews. Included in the crew of the former was plaintiff, a switchman who had been employed in such capacity for twenty-one years and who was thoroughly familiar with the yards in question, as well as the work performed therein. At the time the Wabash engine passed over the Big Four intersection, plaintiff was riding upon a footboard of the engine. At a point some one hundred feet north of such intersection, he stepped off the footboard for the purpose of setting the switch on the Wabash transfer track, which necessitated his crossing defendant's track.

Plaintiff testified in direct examination: "I looked north and south when I got off, standing there for a second or two. I saw nothing to the north. To the south I saw a yard engine, C. & E. I., about twenty feet south of this stop board. It was moving to the north. I started to cross, going a little northwest. I did not stop any time after starting across there. I walked about forty feet when I was hit with the engine. Then I was just stepping over the west bound rail of the C. & E. I. tracks, the farthest rail over. The engine hit me on the shoulder and knocked me down. I saw it just about the time it hit me. It took me about nine or ten seconds to walk that forty feet." On cross examination he testified: "That train (referring to defendant's engine) was in motion when I first saw it. I estimate it was 145 feet south of the P. & E. (Big Four) crossing. It was moving about six miles an hour. I did not look to the south again before I.

was struck. Visibility was good on the day of the accident. You could see at least a half a mile in any direction. I knew I had to cross the C. & E. I. tracks somewhere along there. There was nothing to obscure my vision if I had looked south to the oncoming northbound C. & E. I. engine. If I had looked south at any time, I could have seen any engine that was on the track. I was facing northwest when I was struck. The engine was approaching from my left. I had worked over this same crossing twenty-one years. The same movement was done every day, nothing peculiar about it. I was about 120 feet north of the Big Four when I was struck." Plaintiff also testified, "I did not hear any signal from the C. & E. I. engine." He later testified: "That engine that day didn't sound any whistle or bell." Neither plaintiff nor any other witness testified that defendant's engine failed to stop before crossing the intersection. No other witness testified on behalf of the plaintiff as to any issue material to this appeal.

Pitman, the fireman of defendant's engine, was the only eye witness produced by defendant. He was located on the east side of the engine, or the side from which plaintiff approached defendant's track. He testified that he saw the plaintiff drop off the front footboard of the Wabash engine, fifty or sixty feet north of the Big Four crossing; that plaintiff angled up to a foot path that runs along and parallel to defendant's track (identified path on photographs introduced in evidence) and started walking north along such path; that plaintiff all of a sudden made a step to the back or north end of the C. & E. I. engine; that he hollered to his engineer to stop, and his engineer stopped immediately; that an automatic air bell on their engine was ringing at all times during this movement. On cross examination Pitman testified that his engine was backing up at a rate of six or seven miles an hour; that when plaintiff got to the path parallel and adjacent to defendant's track he was about seventy-five feet to the north and walked another seventy-five feet along the path before stepping in front of the engine; that no signal was given while plaintiff was walking that seventy-five feet, except the automatic bell was ringing; that plaintiff started to step across the track when the engine was about four or five feet away.

Six witnesses, including defendant's crew and the signalman at the intersection, testified positively that defendant's engine

stopped south of the intersection as required, that two blasts of the whistle were sounded in response to the signal that the crossing was clear and that the automatic bell was ringing and continued to ring until the accident occurred.

There is no occasion to cite authorities in support of the well established rule that a jury question is presented when the proof, taken with all reasonable inferences most favorable to the plaintiff, tends to support the cause of action. A motion for a directed verdict raises a question of law only where there is no affirmative proof in support of such action. The difficulty presented in this and in all cases where such a motion is made is not the rule, but its application to the facts of each case. A large number of cases are cited by both parties in support of their respective contentions concerning the issues before us. Many of such cases, especially those cited by the plaintiff, are from jurisdictions other than Illinois. Inasmuch, however, as this accident occurred in Illinois and is governed by the decisions of that State, cases from other jurisdictions are of little value.

It is not easy to determine from plaintiff's brief just what is relied upon as showing defendant's negligence. It appears, however, that reliance is placed upon the uncertain testimony of the plaintiff that he was given no warning by bell, whistle or otherwise of the approach of defendant's engine. A further contention is made that defendant's engine failed to stop before crossing the intersection. There is not a scintilla of proof in support of the latter contention. All the witnesses who testified on this point stated positively that the stop was made. Plaintiff's counsel, by calculating the distance traveled by plaintiff in crossing over to the track of the defendant, the distance traveled by the engine from the point where he observed it to the point of the accident, and by estimating the length of time required to stop and start the engine, arrives at the conclusion that there was not sufficient time for the engine to have reached the point of the accident if it had stopped at the intersection. We doubt if there is any merit in the argument, and certainly it does not prove or tend to prove the assertion that the engine failed to stop at the intersection as required.

We cannot say as a matter of law that defendant was under no duty to warn plaintiff of the approach of its engine. We are of the view, not without doubt, that plaintiff's uncertain testimony that no warning was given was sufficient to take the case to the jury on the question of defendant's negligence. This opinion, however, is not of controlling importance in view of our definite conclusion that there is an entire failure of proof on the part of plaintiff that he was in the exercise of due care and caution for his own safety.

Here we have a situation, according to plaintiff's own testimony, as follows:

1. He was thoroughly familiar with the yard and track in question.

2. He knew that trains ran over said track at frequent intervals.

3. It was broad daylight.

4. There was absolutely nothing to obstruct his view or distract his attention.

5. He had actual knowledge that the engine was approaching on the track he expected shortly to cross.

6. He made no effort by looking or otherwise to ascertain its whereabouts before stepping into the danger zone.

It is sought to excuse plaintiff's failure to take ordinary precaution for his own safety. It is argued that he had a right to rely upon defendant's duty to warn him of the engine's approach. This excuse is sought to be fortified by the further argument (without support, as heretofore pointed out) that defendant's engine failed to stop before crossing the intersection. Assuming, however, that defendant was guilty of negligence claimed, it would afford no excuse for plaintiff's failure to exercise the degree of care which the law imposes for his own safety.

In Greenwald v. Baltimore & O. R. Co., 332 Ill. 627, 631, 164 N.E. 142, 144, the court, in affirming a directed verdict because of plaintiff's contributory negligence, said: "The rule has long been settled in this state that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track, but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence. (Citing cases.)

One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded." Further, the court said: "No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care." This rule is announced in numerous Illinois cases, including Goodman v. Chicago & E. I. Ry. Co., 248 Ill.App. 128, 135, and in Wuerz v. Southern R. Co., 318 Ill.App. 1, 6, 47 N.E.2d 513. The rule announced in the Greenwald case was followed and applied by this court in Allen v. Pennsylvania R. Co., 7 Cir., 120 F.2d 63.

In Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, 170 N.E. 247, the court, in reversing a judgment for failure of the trial court to direct a verdict on account of plaintiff's contributory negligence, 338 Ill. on page 274, 170 N.E. on page 249, said: "In the absence of willful or wanton injury on the part of the defendant, the plaintiff cannot recover in an action for personal injuries unless it appears he was in the exercise of ordinary care for his safety, and in such case it is the duty of the court to direct a verdict for the defendant if there is no evidence tending to show affirmatively that the plaintiff was exercising due care or to raise a reasonable inference of such care. A party· has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of reasonable precaution."

The facts in the instant case, while in many respects similar, are less favorable to the plaintiff than those considered in Morgan v. New York Cent. R. Co., 327 Ill. 339, 158 N.E. 724. There, the injured person was walking along a footpath near the track of the railroad with his back to the approaching train. In holding that he was guilty of contributory negligence, the court on page 344 of 327 Ill., 158 N.E. on page 726, said: "Morgan was himself guilty of an inexcusable lack of care in heedlessly pursuing his walk along the path in such close proximity to the track as to be within the overhang of the engine while the train was approaching from behind him. He testified that from the time he started from the yard office of the New York Central southwest ·of Ford street to the time he was hit he did not look around to see whether a train was coming in the direc-

tion in which he was going on the track adjacent to the path on which he was walking. * * * Had he kept a lookout ·for his own safety, he would have discovered the train and avoided injury. Because of such lack of care the plaintiff was not entitled to a verdict unless the evidence showed the railroad company to be guilty of having willfully and wantonly caused the injury * * *."

█ We think there is no escape from the conclusion that plaintiff's unfortunate accident was the result of his own failure to exercise ordinary care. With knowledge, born of many years of experience, that a railroad track is always a dangerous place, and knowing that an engine was approaching in his direction, he carelessly and without the slightest regard for his own safety stepped in front of it. In order to have avoided such consequences, it was only necessary for him to look and ascertain the whereabouts of the approaching engine. In reaching this conclusion, it would serve no good purpose to discuss the numerous cases cited by the plaintiff wherein it has been held that a jury question was presented. It may be said of such cases generally, and perhaps specifically, that in each of them there were unusual circumstances which interfered with plaintiff's view, such as obstructions, curves in the track, darkness, smoke, etc. Under such circumstances, it was left to the jury to determine whether plaintiff's failure to recognize the danger at hand amounted to contributory negligence. In the instant case, however, there was nothing, according to plaintiff's own version of the matter, to obstruct his view or distract his attention. He failed to see the approaching engine for the sole reason that he failed to look.

█ There is no occasion to repeat the facts in considering plaintiff's charge that his injuries were sustained as a result of defendant's wilful and wanton conduct. Here again, we think that under the well established rule in Illinois no jury question was presented. Plaintiff's contention in this respect is predicated solely upon the fact that defendant's fireman saw plaintiff in a place of danger and should have warned him of the engine's approach, and, if necessary, should have stopped the engine. The fallacy of this contention arises from the fact that plaintiff was not known to the fireman to be in a place of danger until too late to stop the engine. As was said

in Morgan v. New York Cent. R. Co., supra, 327 Ill. at page 345, 158 N.E. at page 726, in deciding that the defendant was entitled to a directed verdict on the charge of wilful and wanton conduct: "The engineer had a right, when he first saw Morgan, to act on the presumption that Morgan would do what a reasonably prudent man would do and refrain from going upon the track or putting himself in a place of danger. The engineer was not required to stop the train until it became apparent that Morgan had not heard or would not heed the signal. While the question of willful or wanton conduct is usually a question of fact for the jury, yet where all the evidence, viewed in its most favorable light for the plaintiff, does not tend to show a willful and wanton act done without regard to the safety of others, the jury should be directed to find a verdict for the defendant. Such is the case here."

Again assuming that the defendant was negligent in the manner claimed, it does not follow, as plaintiff seems to argue, that such negligence was wilful and wanton. As was said in the recent case of Bartolucci v. Falleti, 382 Ill. 168, 176, 46 N.E.2d 980, 984: "Even if it be conceded that plaintiff proved negligence on the part of defendant in the present case, the concession does not aid her. Negligence and wilful and wanton misconduct are not synonymous. As has been pertinently observed, 'Negligence and willfulness are as unmixable as oil and water.' Chicago, R. I. & P. R. Co. v. Hamler, 215 Ill. 525, 74 N.E. 705, 710, 1 L.R.A.,N.S., 674, 106 Am. St.Rep. 187, 3 Ann.Cas. 42."

In Provenzano v. Illinois Cent. R. Co., 357 Ill. 192, 191 N.E. 287, a judgment for the plaintiff was reversed on the ground that defendant was entitled to a directed verdict. After holding that the plaintiff was guilty of contributory negligence, the court gave consideration as to whether defendant's conduct was wilful and wanton. The negligence charged was a failure to ring a bell or sound a whistle and excessive speed in approaching a highway crossing. The court, after expressing doubt as to the proof in support of such charges, 357 Ill. on page 196, 191 N.E. at page 288, stated: "However, even if it be taken as true that no bell was rung or whistle sounded, it would be nothing more than an act of negligence. The same is true as to the speed at which the train was running, even

if it be assumed at the highest estimate of 60 miles per hour." On the same page [191 N.E. 289], the court further stated: "There being no evidence showing or tending to show that the defendant willfully or intentionally injured the plaintiff and no evidence of any circumstance exhibiting a reckless disregard for his safety, there should have been a directed verdict as to the third count [wilful and wanton] of the declaration."

The cases relied upon by the plaintiff, which hold that a jury question was presented on wilful and wanton conduct, generally, we think, are confined to those wherein the plaintiff was in a known place of danger. Such was the situation in Bernier v. Illinois Cent. R. Co., 296 Ill. 464, 129 N.E. 747, as well as in Pittsburgh, C. C. & St. L. Ry. Co. v. Kinnare, 203 Ill. 388, 67 N.E. 826. Although not expressly stated, it appears that Brown v. Illinois Terminal Co., 319 Ill. 326, 150 N.E. 242, is predicated upon similar reasoning. Another case strongly urged as supporting plaintiff's contention is that of Bremer v. Lake Erie & W. R. Co., 318 Ill. 11, 148 N.E. 862, 41 A.L.R. 1345. In that case, the engineer failed to observe a stop signal and as a result had a head-on collision with a freight train. On the latter was plaintiff's intestate, whose presence on the train was not discovered until the time of the collision. The court affirmed a judgment for the plaintiff based upon the defendant's wilful and wanton conduct. The court, after reviewing the facts, concluded that the negligence was of such a gross character and wilful purpose as to present a jury question as to whether it was wilful and wanton. Whatever may be thought of this case, we do not think it is applicable, and that it is not out of harmony with the general rule in Illinois that wilful and wanton conduct does not exist merely by a failure to give warning of an approaching train.

Defendant further contends that in any event plaintiff was guilty of such conscious and wilful disregard of his own safety as to bar recovery. Such contention finds support in Willgeroth v. Maddox, 281 Ill. App. 480. However, in view of our conclusion that defendant was entitled to a directed verdict on the charge of wilful and wanton conduct, we see no reason to consider or decide, and we do not do so, defendant's contention in this respect.

228

The judgment is reversed and the cause remanded, with directions to the District Court to enter judgment in favor of the defendant.