CHICAGO, BURLINGTON AND QUINCY RAILROAD CO.

*v.*

ROBERT DAMERELL *et al.*

1. RAILROAD COMPANY—*duty of, to ring bell or sound a whistle.* The precaution which the statute requires of a railroad company, upon its cars approaching a public crossing, is to ring a bell or sound a whistle, and the company does its duty in this regard, by ringing a bell without blowing the whistle.

2. SAME—*not required to stop train at a crossing.* It is not the duty of the engine-driver, on nearing a road crossing, to stop his train for the purpose of avoiding a collision with a team he may see approaching the crossing.

3. NEGLIGENCE—*of party injured by railroad collision.* It is the duty of a person about to cross a railroad track, to look about and see if there is danger, and not to go recklessly upon the track; and if a person, well acquainted with the locality, and knowing that it is about time for a train to pass a crossing, heedlessly drives upon such crossing without looking to see if there are cars approaching, when, by looking, he could easily have seen an approaching train, he is guilty of gross negligence, and can not recover for any injury he may receive by reason of a collision with such train.

APPEAL from the Circuit Court of Hancock county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Messrs. SCOFIELD & HOOKER, for the appellant.

Mr. H. W. DRAPER, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

These were two actions, one in the name of Emanuel, and the other in that of Robert Damerell, as plaintiffs, to recover for damages from a collision on the railroad of the defendant

The actions were consolidated in the court below, and a verdict and judgment rendered in favor of the plaintiffs. The defendant appealed.

The principal facts are:  That on April 7, 1875, about 10 o'clock A. M., at the railroad crossing of a public highway between West Point and Stillwell, and one and a half miles south of West Point, a passenger train upon defendant's railroad, going south, came in collision with a team and wagon, killing two horses and a colt, destroying the harness and damaging the wagon; the property belonging in separate portions to the plaintiffs. The railroad track and highway cross each other at right angles and nearly on the same level. The track is two to three feet higher than the wagon road, with approaches on each side ten to twelve feet in length, of such grade as not to hinder a team passing over the crossing. About sixty rods north of the crossing, the track enters a cut, which extends on north about one hundred rods. The cut is eighteen or twenty feet deep near its north end, and decreases in depth towards the south, and runs out to level ground at its south end. A highway runs south from West Point parallel with and about sixty feet east of the railroad track, and intersects a highway running east and west, on which latter is the railroad crossing, one and a half miles south of West Point. There is a hedge on the west side of the highway running south and on the north side of the highway running east and west, ending sixteen feet east of the railroad track, from six to ten feet high, and, at that time, bare of leaves.

The witness Henry Damerell, who had charge of and drove the team, lived in that vicinity, was well acquainted with the crossing, and knew that the passenger train going south passed the crossing about that time.

He drove south on the highway from West Point and turned west toward the crossing.

As the horses went on the track, he looked and saw the train coming and about twenty-five yards off. He struck the horses with the lines, but before he could get the wagon on the track, the collision took place, the engine striking the wagon about

·the doubletrees and throwing the team on one side of the track and the wagon on the other. The wind was blowing tolerably hard from the south-west. The train was about half an hour behind time, and running 28 to 30 miles an hour. It consisted of engine, tender, baggage car and passenger car.

We find it necessary, here, to consider but the one question, whether the verdict was sustained by the evidence.

Appellees claim that the bell was not rung or whistle sounded for the required distance before reaching the crossing.

Eight witnesses on the part of defendant testified, positively, that the bell was rung for the requisite distance before reaching the crossing. The bell of the engine was rung by a steam attachment, and when started kept on ringing until stopped by shutting off the steam. Six witnesses on the part of plaintiffs testified negatively—that they did not hear the bell ring.

The inferior character of such negative evidence has been often remarked upon, and is well understood.

All the evidence, taken together, leaves no reasonable doubt upon the mind, that the bell was rung all the way from West Point, a distance of a mile and a half, to the crossing.

But it is said the whistle was not sounded; and that as the wind was blowing tolerably hard from the south-west, in a direction naturally calculated to carry away from the driver of the team the sound of the bell, it was the duty of the defendant to have blown the whistle. But the statute only requires that the company shall ring the bell or sound the whistle. This is the precaution which the law has prescribed that the company shall make use of on approaching the crossing, and by ringing a bell, the company performs its statutory duty in this regard.

The engine-driver testifies that he did not see the team and wagon until the engine struck them. But as the fireman on the engine testified that when he first saw the team the train was just passing out of the cut, and the team was then about a horse's length east of the crossing, and that at that time the train could have been stopped before it reached the crossing, it is insisted there was culpable negligence in not stopping the

train, and so avoiding the collision. The cut was about sixty rods from the crossing, and the fireman had reason to suppose that there was time for the team to safely cross over in advance of the train, or that the team would stop before going upon the crossing. The fireman says, when he first saw the team east of the crossing, he supposed it would stop; that in a moment he looked out again, and it was coming on the track, and he applied the air brake at once, but that the train could not then be stopped in time to avoid the collision. There was reason for the fireman supposing the team would stop. The team and train were in full view of each other. The railroad track just before the team, the sign-board over the crossing, the noise of the train and the ringing of the bell, all warned the driver, of the approaching train.

The fireman might, not unreasonably, suppose that the driver would heed the warning, and not recklessly attempt to cross the track in advance of the train. This court has frequently asserted the doctrine, that it is not the duty of the engine-driver, on nearing a road crossing, to stop his train for the purpose of avoiding a collision with a wagon and team he may see approaching the crossing. *St. Louis, Alton and Terre Haute Railroad Co.* v. *Manly,* 58 Ill. 300; *Chicago, Burlington and Quincy Railroad Co.* v. *Lee,* 68 id. 576; *Toledo, Wabash and Western Railway Co.* v. *Jones,* 76 id. 312.

But there was, here, such negligence on the part of Damerell, the driver of the team, as to preclude all right of recovery. He lived in that part of the country and was well acquainted with the crossing. It was a clear morning. He drove south on the highway from West Point, and turned west into the wagon road leading to the crossing, and which crossed the railroad track at right angles. The crossing was directly in front of him and only sixty feet distant. From the time he turned into this wagon road, from his seat in the wagon, he had a clear view of the railroad track from the crossing north— the direction from which the train came—to the south end of the cut, a distance of about sixty rods  The hedge was bare of leaves and did not obstruct the view.

The evidence shows, beyond question, that had the driver of the team looked, he could have seen the train from the time it came out of the cut, all the way as it passed from the cut to the crossing, and that he could have seen the smoke and steam of the engine before it emerged from the cut. In the language of the witness Henry Damerell, himself, who was in the wagon driving the team, " Horses were on the track when I saw train; was driving along at usual speed; don't know that I looked on either side for train; did not stop horses before going on the track; don't know what made me look towards the train; just happened to look; horses then on track and train about twenty-five yards off; struck horses with the lines when I saw train; was driving in a walk when I turned corner towards crossing; did not look on either side for train upon driving on the crossing." Such is the undisputed testimony. There was here, clearly, the want of the exercise of ordinary care and prudence in going upon the crossing.

As said by this court, in *Chicago, Burlington and Quincy Railroad Co.* v. *Hazard*, 26 Ill. 373: "The books are full of cases where, in such actions as this, the burden of proof is always held to be on the plaintiff, that he was himself exercising ordinary care and diligence at the time the accident happened." *A. B. Railroad Co.* v. *Grimes*, 13 Ill. 585; *Chicago, Burlington and Quincy Railroad Co.* v. *Dewey*, 26 id. 255; *Illinois Central Railroad Co.* v. *Simmons*, 38 id. 242; *Chicago and Alton Railroad Co.* v. *Gretzner*, 46 id. 74; *Chicago and Northwestern Railroad Co.* v. *Sweeney*, 52 id. 325 ; *Chicago, Burlington and Quincy Railroad Co.* v. *Patten*, 64 id. 510; *Chicago, Burlington and Quincy Railroad Co.* v. *Lee*, 68 id. 576; *Chicago and Alton R. R. Co.* v. *Becker*, 76 id. 25; Wharton on Negligence, § 300; Shearm. and Redf. on Negligence, § 25; *Illinois Central Railroad Co.* v. *Green*, *ante*, p. 19; 2 Redf. Am. Railway Cases, in note.

This court has repeatedly declared the doctrine that it is the duty of persons about to cross a railroad track, to look about them, and see if there is danger; not to go recklessly upon the track, but to take the proper precautions themselves

to avoid accidents at such places. *Chicago and Rock Island Railroad Co.* v. *Still,* 19 Ill. 499; *Galena and Chicago Union Railroad Co.* v. *Dill,* 22 id. 265; *Chicago and Alton Railroad Co.* v. *Gretzner,* 46 id. 82; *Toledo, Peoria and Warsaw Railroad Co.* v. *Riley,* 47 id. 515; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Manly,* 58 id. 300; *Chicago and Alton Railroad Co.* v. *Jacobs,* 63 id. 179; *Chicago, Burlington and Quincy Railroad Co.* v. *Lee,* 68 id. 576; *Toledo, Wabash and Western Railway Co.* v. *Miller,* 76 id. 278; *Toledo, Wabash and Western Railway Co.* v. *Jones,* id. 312; *Chicago, Rock Island and Pacific Railroad Co.* v. *Bell,* 70 id. 102; and see *Pennsylvania Railroad Co.* v. *Beale,* 73 Penn. St. 504; *McGrath* v. *New York Central and Hudson River Railroad Co.* 59 N. Y. 468. It was said in *Chicago, Burlington and Quincy Railroad Co.* v. *Van Patten,* 64 Ill. 516, that the neglect of such precautions would be gross negligence.

It is evident here, that the driver of the team, by the exercise of ordinary care and prudence, might have discovered and avoided the approaching train, and that he went upon the crossing heedlessly and recklessly, without using any precaution to ascertain whether or not there was a train approaching. The air-brake seems to have been applied and all reasonable effort used to stop the train and avoid the injury, as soon as it became apparent the team was coming on the track without stopping, and was in a position of actual danger. There is no room for imputing anything like intentional or wanton wrong to the employees of the company. The evidence fails to make out a case for a recovery.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. Justice Walker, and Mr. Justice Dickey, concur in the decision announced in this case, but dissent from a portion of the reasoning and some of the rules announced.