## ROBINS v. PITCAIRN et al.
### No. 7748.

Circuit Court of Appeals, Seventh Circuit.

Dec. 9, 1941.

Rehearing Denied Jan. 14, 1942.

Thos. L. Owens, of Chicago, Ill. (Owens & Owens, and Albert E. Jenner, Jr., all of Chicago, Ill., of counsel), for appellant.

Meyer Morton, Elmer W. Freytag, Erwin W. Roemer, Joseph H. Hinshaw, and Oswell G. Treadway, all of Chicago, Ill. (N. S. Brown, of St. Louis, Mo., of counsel), for appellees.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

The appellant, who was plaintiff below, brought this action in the Superior Court of Cook County, Illinois, against Norman B. Pitcairn and Frank C. Nicodemus, Jr., Receivers of the Wabash Railroad, and Dorcas E. Sturn, Administratrix of the estate of Leo A. Sturn, deceased, to recover damages for injuries he sustained while riding as a passenger in an automobile owned and operated by Leo A. Sturn, when the machine struck a train operated by the Receivers of the Wabash Railroad Company. Upon motion of the defendant Receivers, the case was removed because of diversity of citizenship to the District Court. There was a trial before a jury. At the conclusion of the evidence for the plaintiff, the court instructed the jury to return a verdict for

the defendants and judgment was entered thereon. To reverse the judgment, plaintiff appeals.

In his complaint plaintiff alleged that he was in the exercise of ordinary care for his own safety, charged that the defendant Receivers negligently, wilfully, wantonly, and with reckless indifference to consequences operated their train at a high and excessive rate of speed, failed to give any warning of the approach of the train, failed to provide proper warning signs, and failed to eliminate a dangerous grade crossing; charged that the defendant administratrix's intestate negligently, wilfully, wantonly, and with reckless indifference to consequences operated said automobile at a high and excessive rate of speed. Both defendants denied the negligence charged and that plaintiff had been in the exercise of ordinary care for his own safety, and the defendant administratrix alleged that the plaintiff was riding in Sturn's automobile as a guest and not as a passenger for hire.

■ The question presented is whether the court erred in directing the jury to find for the defendants. Plaintiff claims that there was sufficient evidence justifying submission of the case to the jury. A question of law is thus presented: Whether, from the evidence in favor of the plaintiff, standing alone and when considered to be true, together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. Ziraldo v. W. J. Lynch Co., 365 Ill. 197, 6 N.E.2d 125.

It appears that the accident occurred on the afternoon of July 22, 1938. Plaintiff, a young man twenty-one years of age, had started that day to go from Normal college near Bloomington, Illinois, to Chebanse, Illinois, by way of Dwight and Kankakee. After Robins had reached Dwight, Illinois, on State Route 17, he accepted the invitation of Leo A. Sturn to ride with him in his automobile to Kankakee. This was between five and six o'clock in the afternoon. Rain was falling, and it was dark and cloudy from the time the plaintiff entered the automobile until the happening of the accident. Sturn drove at a high rate of speed. He drove around the curve on the southwest side of the village of Reddick at such speed that Robins asked him, "isn't that a little too fast for that turn on this road and this kind of weather?" Leaving the town the driver increased the speed until he was traveling between sixty and seventy miles per hour, when he passed a Model A Ford just before taking the long curve which turned east one-half mile north of Reddick. Without slackening speed, he rounded the curve on the outside rim of the highway and continued east until seconds before the accident with the defendant Receivers' train at the railroad crossing one-half mile east of the long curve. As to this stretch of road west of the crossing, plaintiff was asked:

"Q. How far ahead could you see along the road? A. Well, you could see a half mile, anyway, along the road. I am not saying you could see a half mile perfectly, distinctly, like you could on a clear day; but you could see a half mile.

"Q. And what distance could you look ahead and see everything clearly about you? A. Well, let's see,—well, I will say several hundred yards."

The automobile was three hundred feet from the crossing when the driver vainly tried to stop his car from hurtling into the side of the train.

The train was the high speed Blue Bird, which was traveling in a southwesterly direction at seventy-five miles per hour. The engine's light was on and its automatic bell had been ringing continually. The engineer first saw the swiftly moving car when it was a little over a quarter of a mile from the crossing and he started to sound the whistle three hundred feet before coming to the whistling board or fifteen hundred feet from the crossing. When the locomotive was two hundred feet from the crossing the engineer concluded the automobile was not going to stop, but before the brakes could be set the engine was at the crossing. The train stopped about three-eighths of a mile beyond the crossing. The automobile skidded into the side of the train between its second and third coach.

■ Railroads in their very nature are an integral part of our modern complex society. Day by day the demands of this society upon them grow greater; speed and still more speed is the order of our all too insistent times. The train in question was being operated at a speed which the public and the business of modern transportation requires of one who would serve. It was traveling through an open country, the view of which was unobstructed. Under such circumstances, the operation of the train was not negligence. Cf. Constantine v. Pennsylvania R. Co., 7 Cir., 114 F.2d 271; Letush v. New York C. R. Co., 267 Ill.App.

526; Grubb v. Illinois Terminal Co., 366 Ill. 330, 337, 8 N.E.2d 934.

Counsel for plaintiff next makes the point that the defendant Receivers failed to give any warning of the approach of the train and failed to provide proper warning signs. The single track right of way ran from the northeast to the southwest cutting Route 17 at a forty-five degree angle. It was the ordinary country railroad crossing protected by the familiar "X" crossing sign which at the time of the accident lay down on the side of the road.

■■ The affirmative evidence was that the train's automatic bell was constantly ringing and that the whistle was sounded fifteen hundred feet from the crossing. To be sure, the plaintiff riding in the automobile with windows closed did not hear the bell and testified he heard the whistle just before the crash, but this at best is negative and does not raise an issue of fact. Morgan v. New York C. R. Co., 327 Ill. 339, 343, 158 N.E. 724; cf. Provenzano v. I. C. R. R. Co., 357 Ill. 192, 196, 191 N.E. 287. Under this state of the record it can not be said that the railroad did not fulfill its duty as to warnings. Chicago, B. & Q. Ry. Co. v. Damerell, 81 Ill. 450; cf. Nardoni v. Chicago & E. I. Ry. Co., 261 Ill.App. 339.

■ We have assumed for the purposes of this appeal that the cross-arm sign was not standing at the time of this accident. This can not alter the question of defendant Receivers' liability. Beyond peradventure, if the wood "X" sign were standing, it could not have been seen on the dark, rainy day in time for the driver of the speeding car to stop before the crossing. The position of the sign was not the proximate cause of the accident.

Plaintiff next contends that the court erred in excluding evidence of prior accidents at the same crossing. The record discloses that counsel for plaintiff offered to prove that two accidents had occurred at the crossing in question, one nine months before and the other two years prior to July 22, 1938, and that there had been no change in the structure during the two years preceding July 22, 1938.

■■ In discussing the applicable rule, the court in the case of Moore v. Bloomington, etc., R. Co., 295 Ill. 63, page 67, 128 N.E. 721, page 722, said: "The rule in relation to the competency of testimony of other accidents is that, where such testimony tends to show the common cause of the accidents to be a dangerous unsafe thing, or condition, the evidence as to such accidents is competent, not for the purpose of showing independent acts of negligence, but for the limited purpose of showing that the unsafe thing or condition causing the particular accident was the condition or cause common to such independent accidents, and that the frequency of such accidents tends to show knowledge of such condition. * * * The condition or thing shown to be the common cause of danger in such accidents must be the condition or thing contributing to the danger of the accident complained of." In our case the offer of proof did not include an offer to prove the conditions prevailing at the time of the two prior accidents. Under such circumstances the court did not err in sustaining the objection.

■ We now proceed to consider the contention that the court erred in directing the jury to find the defendant administratrix not guilty. In the consideration of this point, it will not be necessary to restate the facts except to say we have eliminated the question that plaintiff asked the driver "if he was not driving a little fast for the weather," since that evidence was not admissible against the administratrix.

Plaintiff's counsel argues that there is no evidence of negligence on the part of plaintiff, that the record discloses that Sturn's conduct was wanton and reckless in that he operated the automobile in utter disregard of the safety of the plaintiff, and that under such circumstances a question of fact arises for the jury to determine.

On the other hand, defendant administratrix contends that the collision was due to the failure of Sturn and the plaintiff to discover the approach of the train in time to stop and that the plaintiff had as good an opportunity to discover this danger as did Sturn. Dee v. City of Peru, 343 Ill. 36, 174 N.E. 901 and Willgeroth v. Maddox, 281 Ill. App. 480. We have read the cases cited and believe they are not controlling since they are distinguishable on the facts.

■ Whether a personal injury has been inflicted wilfully or wantonly depends upon the circumstances of each case and is a question of fact to be determined by the jury, if there is evidence to support the allegation. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding cir-

738

cumstances and conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person of another and an entire absence of care for the life or person of another, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness. Streeter v. Humrichouse, 357 Ill. 234, 238, 191 N.E. 684. Applying the test thus announced to the evidence as disclosed by the record, we are impelled to the conclusion that there was evidence warranting a submission of the case to the jury.

For the reasons stated, the judgment for the Receivers is affirmed and the judgment for the administratrix is reversed.