# Broad *v.* Pennsylvania Railroad Co., Appellant.

Argued October 1, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John R. Bredin,* with him *Dalzell, McFall, Pringle & Bredin,* for appellant.

*Edward O. Spotts, Jr.,* with him *Robert B. Elliott,* for appellee.

OPINION BY MR. JUSTICE DREW, November 10, 1947:

Plaintiff, William Broad, brought this suit in trespass to recover damages for serious and permanent injuries sustained by him as a result of a collision between a 1½ ton Ford truck, driven by him but owned by the County of Allegheny, and a freight train owned and operated by Pennsylvania Railroad Company, defendant. The jury rendered a verdict of $20,000 in plaintiff's favor. Thereafter, motions for a new trial and for judgment n. o. v. were refused, and defendant appealed from the judgment entered on the verdict.

Construing the testimony in the light most advantageous to plaintiff and resolving in his favor all doubts and conflicts therein, the following are found to be the

pertinent facts: The accident occurred on the clear, dry afternoon of May 27, 1941, at about 1:30 o'clock, on the Center Street crossing in Blawnox, Allegheny County. Center Street runs in a northerly and southerly direction, and three tracks of defendant railroad (the eastbound and westbound main tracks, and a side track extending into Blawnox Station) intersect this thoroughfare at right angles. The side track is located about 29 feet to the north of the westbound track. There is a clear and unobstructed view of 1050 feet from the center of the crossing to the east.

Plaintiff, a guard at the Allegheny County Workhouse situated nearby, was driving the truck, loaded with furniture, westwardly on a dirt road, which runs parallel to and immediately to the north of defendant's side track. He was accompanied by two inmates of the Workhouse. When this truck reached a point near the intersection of the dirt road and Center Street, plaintiff brought it to a stop, and then turned it to his left onto Center Street. The truck proceeded southwardly along the latter street, crossed over the side track and was brought to a stop about 5 or 6 feet north of the westbound main track alongside of a railroad signal light. Here plaintiff looked and listened, and he saw and heard nothing. The signal lights were not then operating. He drove in low gear onto the first, or westbound track; and there for some reason the truck stalled. Plaintiff again looked and listened, and, seeing and hearing no train approaching in either direction, he endeavored to start the vehicle by stepping on the starter and pulling out the choke. Again, the truck started, but, after travelling for the short distance of 5 or 6 feet, it stalled once more. At that time the truck was partly on the westbound and partly on the eastbound tracks. In the brief interval in which plaintiff tried to again start the vehicle, it was hit by a westbound train of defendant, consisting of a locomotive, 104 empty cars and a caboose. But 30 to 35 seconds elapsed between the time the truck

first stalled and the collision. After striking the truck, the train did not stop until its engine reached a point some 546 feet west of the crossing. The force of the impact threw the truck 50 feet and plaintiff about 25 feet southwest of the crossing.

Defendant argues (1) that there was no negligence on its part, (2) that plaintiff was guilty of contributory negligence as a matter of law, and (3) that the verdict is excessive.

As to the first of these contentions, it is obvious that there is much evidence to convict defendant of gross negligence. While the testimony of the parties and their witnesses was conflicting, the issue as to defendant's negligence was clearly one for the jury. The truck, stalled on the westbound track, was clearly visible from the east (the direction from which the train approached) for 1050 feet. The train was traveling at 40 to 45 miles an hour, and did not slacken its speed as it neared Center Street. Smith, defendant's engineer, admitted that he saw the truck on the track in front of him when his freight train was some 700 to 800 feet away, and at that time he knew it was not moving. He also said that he could have stopped the train in 500 to 600 feet; and yet it proceeded into the intersection, struck the truck, threw it 50 feet and continued for a distance of 546 feet beyond the crossing before it was brought to a stop. This witness for defendant made the further admission that he did not apply the emergency brake until he was 150 to 200 feet from the crossing.

The evidence given by plaintiff's witnesses as to not hearing a warning signal was negative in character and could not prevail against the positive testimony of the witnesses for defendant that such warning was given. However, a number of witnesses for the defense stated that the train whistle was not sounded until immediately before the crash. Clearly, it was for the jury under such evidence to determine whether defendant had given adequate warning of the train's approach. We said, in

*Anstine v. Penna. R. R. Co.*, 342 Pa. 423, 20 A. 2d 774 (p. 428) : "It is true that decisions involving the adequacy of the signal of the railroad generally turn on whether the warning was given soon enough in view of the rapid movement of the train (see, for example, Childs v. Pennsylvania R. R. Co., 150 Pa. 73; Cummings v. Pennsylvania Railroad, 304 Pa. 219), but, by the same token, the adequacy of the signal may just as well depend upon whether it was given too soon, in view of the retarded rate of speed of the train. In either event, the question is whether the warning is *timely* in view of all the circumstances. It cannot be said as a matter of law that the mere fact that the whistle was blown at some indefinite time prior to the accident discharged the duty of defendant company."

Nor do we agree with defendant's second contention, i. e., that plaintiff was guilty of contributory negligence as a matter of law. According to the evidence adduced by plaintiff the freight train was in plain view for 1050 feet from the time the truck first stalled on the westbound track until it was struck, and of course the engineer had the same view of the truck as plaintiff had of the train. The admission of the engineer, called as a witness by the defense, clearly shows that the train could have been stopped before reaching the crossing, and the collision thereby avoided. Under the testimony produced by plaintiff, this is not a case of one attempting to cross a railroad track immediately in front of a freight train; rather, it shows that there was time for the truck to have crossed the tracks if its motor had not stalled.

A careful study of this record shows that plaintiff fully performed his legal duty before entering upon the westbound track. The railroad warning signal was not yet operating. The testimony shows those lights began flashing when a train was 2260 feet from the crossing, so it is conclusive that when plaintiff went upon the tracks this train was more than that distance from the

crossing. Tests were made which prove the lights were operating normally, also witnesses testified the lights were working normally. Plaintiff stopped, looked and listened, and, when he neither saw nor heard a train approaching, he proceeded onto the track. There his truck stalled, through no fault of his own. The entire interval of time between the first stalling of the truck and the crash was but 30 to 35 seconds. The train, traveling at 40 to 45 miles an hour, traversed the 1050 feet, for which distance its engineer had an unobstructed view of the crossing, in about 16 seconds. Under the circumstances, plaintiff was confronted by a sudden emergency, and was placed in a position of great peril. In such a situation, all plaintiff was required to do was to exercise his best judgment. Obviously, only a jury could properly apply the standards of care required by a reasonable and prudent person placed in like circumstances.

This Court said, in *Zurcher v. Pittsburgh Rwys. Co.,* 353 Pa. 212, 216, 44 A. 2d 581: ". . . plaintiff was then in a position of peril through no fault of his own. In such circumstances he was not legally compelled to exercise 'even an ordinary degree of judgment'. Nor was he responsible as a matter of law merely because of his possible errors or mistakes in trying to extricate himself from a position of danger which he had not created. . . . Under the perilous and varying conditions, here shown, only a jury may competently apply the required standards of care . . ." See *Jamison v. Kamerer,* 313 Pa. 1, 169 A. 231; *Bauer v. Sacks,* 355 Pa. 488, 50 A. 2d 351.

As to the alleged excessiveness of the verdict, which is the third contention of defendant, we are all convinced that this argument is also without merit. Plaintiff, at the time of the collision, was about fifty-two years of age, and was employed as a guard at the Workhouse. He still holds this position, although his work has been

made lighter and a great deal less strenuous than it was before he sustained painful, severe and permanent injuries in this accident. He suffered a broken neck, a fracture of the spinous process of the fourth and fifth cervical vertebræ, a fracture of the outer table of the skull with a severe headwound, and a serious concussion followed by a degenerative condition of the brain. He was unconscious for eleven days following the crash, was irrational for some three weeks following his admission to the hospital and was in a plaster cast for three months. He was confined to the hospital from the day of the accident to August 13, 1941, and again for a two-week period, commencing October 19, 1941. He incurred expenses of about $1250 for hospitalization and medical treatment. Plaintiff's condition has become progressively worse. Doctor Fisk, called as a witness for plaintiff, said : "He is handicapped by the disturbance in vision, the nervousness that he has acquired, and I dislike to say it, but some mental degeneration, so that speaking from the ordinary standpoint of employability, I would say the man is completely unemployable."

Judgment affirmed.