GUTIERREZ et al. v. PUBLIC SERVICE
INTERSTATE TRANSP. CO.
No. 131, Docket 20819.

Circuit Court of Appeals, Second Circuit.
June 23, 1948.

Irving Katcher, of New York City (Aaron Frank, Gustave G. Rosenberg, and Nathan L. Samuelson, all of New York City, of counsel), for plaintiffs-appellees.

Philip J. O'Brien, of New York City (John G. Coleman, and Philip J. O'Brien, Jr., both of New York City, of counsel), for defendant-appellant.

---

[12] Warshauer v. Lloyd Sabaudo S. A., 2 Cir., 71 F.2d 146.

Before AUGUSTUS N. HAND, CLARK, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment entered on a verdict returned by a jury for the plaintiffs in an action to recover for the death of their intestate brought originally in the Supreme Court of the State of New York but removed by the defendant to the court below, there being the requisite diversity of citizenship and amount in controversy. The sole question presented is whether the evidence is sufficient to support the verdict.

The undisputed elemental facts are that the starter at the defendant's bus terminal located on the north side of 41st Street between 7th and 8th Avenues in the City of New York, discovered the plaintiff's intestate sitting about six or seven feet in from the gutter on the part of the sidewalk traversed by busses entering the terminal about ten minutes before eight o'clock on the morning of January 15, 1944, soon after one of the defendant's busses had entered the terminal over the sidewalk where the decedent sat. The starter testified that immediately upon observing the decedent he went over to investigate and found the decedent injured and complaining that his "arms hurt." The starter and an unidentified passer-by assisted the decedent to his feet, and the starter then helped the decedent to walk a distance estimated by different witnesses at between 150 and 350 feet to a bench inside the terminal.

The driver of the bus which had crossed the sidewalk to enter the terminal shortly before the decedent was observed said that he made a "test stop" in the street before he drove over the sidewalk, that seeing no one in the way he drove into the terminal, and that as he crossed the sidewalk he saw no one in his path and felt no thud, jolt or bump to indicate that his bus had come into contact with or had run over anything. He said that he drove directly to the far corner of the terminal and brought his bus to a stop, and that he remained in his seat until all of his passengers had alighted. Then he said he stepped out of his bus and as he walked around the rear end of it he saw the starter assisting the decedent across the terminal toward the bench. He joined the starter and the decedent at the bench and remained with them while the starter took the decedent's name and address from an identification card produced by the latter.

About ten minutes past eight an ambulance arrived (none of the witnesses knew who summoned it), and took the decedent to a hospital where he died a few hours later. It is conceded that he died as a result of the injuries from which he was suffering when the starter picked him up.

Late in the afternoon of the day of the accident the bus which had entered the terminal just before the decedent was discovered was inspected by two detectives from the vehicle and homicide squad of the New York City Police Department, from whose testimony as experts it could be found that the license plate on the right front corner of the bus had been bent back indicating "that there was a fresh contact with something, a body or something, a fresh contact, which struck this license plate and bent it into the bus, disturbing the paint and removing particles of its first coating," and that the contact must have occurred very recently, "Maybe an hour, maybe nine or ten hours, maybe a whole day" before. There was also evidence from another witness of a three cornered tear in the decedent's trousers in the region of the left hip, and of a smear of heavy grease "contaminated with debris and dirt" on the trousers in the area of the tear and on the underwear underneath.

The starter testified that at ten minutes before eight A. M. on the day of the accident it was still somewhat dark as war daylight saving time was then in effect, and the lights in the terminal were on. The bus driver said that he could not remember whether his headlights were on or not when he drove into the terminal.

These are the salient facts most favorable to the plaintiffs' case brought to light by the testimony.

■ It appears to be conceded, and there are indications, that the sufficiency of this evidence to support the verdict returned for the plaintiffs is a matter of substantive law within the rule of Erie Railroad Co. v.

Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487. Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284; Cooper v. Brown, 3 Cir., 126 F.2d 874, 877; Moran v. Pittsburg-Des Moines Steel Co., 3 Cir., 166 F.2d 908, 917, 918, certiorari denied 68 S.Ct. 1516. Compare, however, Gorham v. Mutual Benefit Health Acc. Ass'n, 4 Cir. 114 F.2d 97, certiorari denied 312 U.S. 688, 61 S.Ct. 615, 85 L.Ed. 1125; Crockett v. United States, 4 Cir., 116 F.2d 646, certiorari denied 314 U.S. 619, 62 S.Ct. 57, 86 L.Ed. 498, and see also 3 Moore, Federal Practice § 38.02, 1947 Cum.Supp. pp. 15, 22-24. We turn therefore to the law as developed and expounded by the New York courts as charting the course we should follow.

The New York Court of Appeals in Fagan v. Atlantic Coast Line R. Co., 220 N.Y. 301, 310, 115 N.E. 704, 708, L.R.A. 1917E, 663, by way of dictum said:

"Direct or positive evidence that the negligence caused the injuries was not necessary. It has become the established law of this state that in an action to recover damages for a death negligently caused the relevant conditions and circumstances surrounding and relating to the occurrence, unless they interdict as a matter of law an inference or inferences necessary to the verdict, may be submitted to the jury, in the absence of direct proof, in order that the jury may determine the inferences, if any, which they create. Stump v. Burns, 219 N.Y. 306, 114 N.E. 346. An evidential inference must have a reasonable source or basis in the proven facts, and those facts must not tend to support a contradictory or inconsistent inference, or, at least, must sustain the inference invoked with a paramountcy overwhelming an inconsistent inference."

If the last sentence quoted above means what it literally seems to imply it overstates the quantum of proof required in situations like the present, for in the later case of Ingersoll v. Liberty National Bank of Buffalo, 278 N.Y. 1, 7, 14 N.E.2d 828, 829, the same court wrote:

"Where the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury. Ruback v. McCleary, Wallin & Crouse, 220 N.Y. 188, 115 N.E. 449; Digelormo v. Weil, 260 N.Y. 192, 183 N.E. 360. This does not mean that the plaintiff must eliminate every other possible cause. 'The plaintiff was not required to offer evidence which positively excluded every other possible cause of the accident.' Rosenberg v. Schwartz, 260 N.Y. 162, 166, 183 N.E. 282, 283. The existence of remote possibilities that factors other than the negligence of the defendant may have caused the accident does not require a holding that plaintiff has failed to make out a prima facie case. It is enough that he shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred. Stubbs v. City of Rochester, 226 N.Y. 516, 124 N.E. 137, 5 A.L.R. 1396."

Indeed even this statement, if it means that to make out a prima facie case a plaintiff must not only show facts from which the defendant's causal negligence might be inferred, that is, provide a possible hypothesis for a verdict in his favor as in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, but must also go further and show a rational basis for choosing his hypothesis over inconsistent ones, that is, provide a rational basis for the conclusion that it is somewhat more probable than not that his hypothesis is correct, may be an overstatement of the quantum of proof required since in Ford v. McAdoo, 231 N.Y. 155, 131 N.E. 874, 876, the writer of the majority opinion states the broad rule that a plaintiff has not sustained his burden of proof when inconsistent inferences from circumstantial evidence are equally probable and then goes on to say "with this view of the case some of my Associates do not agree." See also White v. Lehigh Valley R. Co., 220 N.Y. 131, 136, 115 N.E. 439, 441, in which it is said: "It is enough if he [a plaintiff] shows facts and conditions from which negligence of a defendant and the causation of

the accident by the negligence may be reasonably and legitimately inferred," and in addition see Warner v. New York, O. & W. R. Co., 209 App.Div. 211, 213, 204 N.Y.S. 607, 609, where it is said: "It is the province of the jury, not only to pass upon conflicting evidence, but, where different inferences may be drawn from the evidence, to draw the inferences."

 But we need not labor the point by further citation of cases and comment thereon since we think that the jury in the case at bar had a rational basis for concluding that the plaintiffs' hypothesis was more probable than any of those suggested as possible by the defendant, i. e., that the decedent may have been struck by a bus entering an adjoining terminal, or even by some vehicle in the street, and then walked or staggered to a sitting position in the defendant's driveway, that he may have been hit by another vehicle and thrown in the path of the defendant's bus, or even that he may have been taken for a "ride" and dropped off where the defendant's starter found him.

It seems to us, even in spite of some fairly strong indications to the contrary, that from the evidence that the decedent was found on the sidewalk in the path taken by busses entering the defendant's terminal at a time just after a bus had entered, re-enforced by the evidence of the recently bent front license plate of that bus and of the tear in the seat of the decedent's trousers (the decedent was approximately five feet five inches tall and the top of the license plate was approximately two feet four inches from the ground), that the jury could rationally have concluded that it was somewhat more probable than otherwise that the decedent had been run down and fatally injured by the defendant's bus. And having found this, the jury could rationally conclude that the cause of the accident was the bus driver's negligent failure to keep a better lookout. The jury, having found that the defendant's bus struck the decedent, could well conclude that the decedent must necessarily have been well within the bus driver's field of vision as he drove across the sidewalk, and that if the bus driver had maintained as vigilant a watch as due care required of one driving a bus across a busy sidewalk in midtown New York in the half light of a weekday morning, he would have seen the decedent in time to avoid striking him, or at least in time to sound a warning with his horn.

And this conclusion of negligence on the bus driver's part is not reached as a result of basing one inference upon another as the defendant contends. It is reached by drawing what the Appellate Division of the Supreme Court of New York in Allen v. Stokes, 260 App.Div. 600, 23 N.Y.S.2d 443, 446, said "may be termed parallel inferences based upon the same facts." Indeed this latter case, and the more recent one of Lowy v. Green, 272 App.Div. 238, 70 N.Y.S.2d 547, rule the case at bar as much as any case of this kind can ever be said to rule another.

 It follows from what we have just said that the court below did not err in refusing to grant the defendant's request to charge the jury "that they cannot base an inference upon an inference."

Affirmed.