**GULF, M. & O. R. CO. v. FREUND.**
No. 14049.

United States Court of Appeals.
Eighth Circuit.

Aug. 9, 1950.

Rehearing Denied Sept. 15, 1950.

Wayne Ely, St. Louis, Mo. (Messrs. Robert C. Ely, St. Louis, Mo. and D. S. Wright, Mobile, Ala., on the brief), for appellant.

Chelsea O. Inman, St. Louis, Mo. (Vincent M. Flynn and Charles E. Gray, St. Louis, Mo., on the brief), for appellee.

Before JOHNSEN, RIDDICK, and STONE, Circuit Judges.

RIDDICK, Circuit Judge.

This appeal is from a judgment entered on a jury verdict in an action for damages for personal injuries sustained by appellee in a collision between an automobile driven by appellee and one of appellant's trains at a grade crossing in Illinois.

Alleging that he was at all times in the exercise of due care for his own safety, appellee charged appellant with negligence causing his injuries (1) in failing to construct and maintain the highway crossing as required by Illinois law, (2) in operating its train at an excessive and dangerous rate of speed, (3) in failing to sound by bell or whistle the crossing warning required by Illinois law, and (4) in failing to stop its train before striking appellee's automobile; and also that in the circumstances of this case the negligent acts and omissions of appellant constituted willful and wanton conduct. Appellant's answer denied appellee's charge of negligence and wanton conduct, and alleged that the collision and appellee's injuries were caused by the contributory negligence of appellee. The trial court submitted the questions of negligence and wanton conduct of appellant and the question of contributory negligence of appellee to the jury. The jury returned a general verdict for appellee.

 The ultimate question on this appeal is the sufficiency of the evidence to take to the jury the conflicting contentions of the parties. The substantive law of Illinois controls. In that State the familiar rule prevails that a jury question is presented when the evidence, taken with all reasonable inferences most favorable to the plaintiff, tends to support the cause of action asserted. Gately v. Chicago & E. I. R. Co., 7 Cir., 138 F.2d 222, 225. It is also the law in Illinois that one who engages in willful and wanton conduct resulting in injury to another is liable therefor even though the injured person was guilty of negligence contributing to cause his injury. As in other jurisdictions, contributory negligence of the plaintiff is a complete defense in an action based on the negligence of defendant. Negligence and willful and wanton conduct are not synonymous in Illinois law. What is willful and wanton conduct in one situation may be negligence in another. Gately v. Chicago & E. I. R. Co., supra; Baltimore & O. R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12, 16. The Illinois cases are collected in a note to Brown v. Illinois Terminal Co., 319 Ill. 326, 150 N.E. 242, in 151 A.L.R. 90-112.

The Illinois courts have recognized the difficulty of accurately stating under what circumstances one may be held guilty of willful and wanton conduct, but the cases agree that such conduct imports both consciousness that injury will probably result from the act done or omitted and a reckless disregard for the consequences. "To constitute a wanton act the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person, or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness, such as charges the person whose duty it was to exercise care with the consequences of a willful injury." Jeneary v. Chicago & I. Traction Co., 306 Ill. 392, 138 N.E. 203, 206. A late Illinois case, Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 69 N.E.2d 293, 300, decided September 18, 1946, gives this definition: "A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."

In Provenzano v. Illinois Central R. Co., 357 Ill. 192, 191 N.E. 287, 288, it is said that "to constitute willful and wanton misconduct the injury must either have been intentionally inflicted, or produced by acts so grossly negligent as to exhibit a reckless disregard for the safety of others", a statement of the rule approved by the Supreme Court of Illinois in Robertson v. New York Central R. Co., 388 Ill. 580, 58 N.E.2d 527, decided November 22, 1944.

Other cases are Carrell v. New York Central R. Co., 384 Ill. 599, 52 N.E.2d 201; Robins v. Pitcairn et al., 7 Cir., 124 F.2d 734.

The sum of the Illinois cases seems to be that wantonness implies a conscious indifference to the consequences of the act or failure to act, or such gross want of care or regard for the life of others as to imply willingness to inflict injury, although malice is not a necessary element of proof. In Illinois law wanton or willful conduct means conduct which may be less than conduct intended to harm another, but is still something more than conduct which is negligent because of failure to exercise ordinary care, and in every case whether an act or failure to act is willful or wanton depends in final analysis upon the facts and circumstances in which the act is done or omitted. Compare definitions of wantonness or recklessness in Restatement of the Law of Torts, Vol. 2, § 500.

With the Illinois cases in mind, we reach the consideration of the evidence. The collision occurred about 7:35 A.M. at a country crossing where a State highway crosses the line of appellant's tracks at approximately right angles, the railroad running generally north and south and the highway east and west. Appellee approached the railroad crossing from the west, and while his automobile was stalled on the crossing was struck by appellant's train coming from the south. On a clear day the driver of an automobile approaching the crossing from the west has a clear view of the crossing and of the railroad tracks to the south for a distance of at least 1000 feet, and this view is unobstructed for a distance of 600 or 700 feet west of the crossing. On the morning of the accident the highway was covered with snow and sleet. Driving was hazardous, and because of the fog the view of the motorist to the south of the crossing was limited to 650 or 700 feet. The highway on which appellee was driving his 1934 Ford automobile is a gravel road, varying in width from 18 to 20 feet, paved with "blacktop" which also varies in width from 16 to 18 feet, with gravel shoulders on either side of the pavement. The highway slopes laterally from the center to the outer edges of the shoulders. The testimony is conflicting as to whether the highway was wider or narrower at the point where it intersected the railroad tracks, but the proof is that the "blacktop" pavement at the intersection was not more than 16 feet wide.

A statute of Illinois requires every railroad to construct and maintain highway grade crossings over its tracks so that the roadway at the intersection shall be flush with the rails. Ill.Rev.Stat.1949, c. 111⅔, § 62. At the crossing in this case heavy planks were laid on the outside of each rail and in the space between the rails. These planks were 16 feet in length, extending across the crown of the highway approximately on a level with the rails of the track, but not across the shoulder on the south side of the highway. There, timbers 4 feet in length were placed on either side of each rail of the track from the south end of the 16-foot timbers to the edge of the gravel shoulder of the highway. The space within the rails and between the inside 4-foot timbers was filled with crushed rock, which at the time of the collision was not flush with the rails the full width of the 4-foot extension. Appellee's evidence describing this situation is that "there is crushed rock, but there is not enough rock to fill the 4 foot space, and the rock is below the rails and below the planks, and drops down to the top of the ties, so that there is a depression there which is 6 inches deep between these 2 inside planks." Photographs of the crossing, accepted by the parties as accurately showing the condition of the crossing, show that the rock ballast sloped from the south end of the 16-foot timbers, where it was approximately on a level with them, to reach its lowest point at the south end of the 4-foot timbers. There is a gap 3 or 4 inches wide where the 4-foot timbers join the 16-foot timbers on the inside of the east rail.

Appellee was the sole eye witness testifying in support of his version of the accident. His evidence is that, because of the slippery condition of the highway caused by the ice, he was driving carefully as

he approached the crossing along the extreme south side of the highway because of his belief that he could secure better traction if the wheels on the right or south side of his automobile were on the gravel shoulder of the highway rather than on the "blacktop" pavement. He was thoroughly familiar with the crossing, having crossed it twice a day for three months. During that time he customarily reached the crossing in the morning at approximately the time of the accident, and he knew that trains frequently reached the crossing at the same time. He testified that as he approached the crossing he was constantly looking and listening for trains, but saw or heard none. At a distance of several hundred feet from the crossing his view to the south of the crossing was better than it was immediately upon the crossing. But from the crossing itself he had a clear view of the railroad tracks to the south of from 650 to 700 feet.

The right-hand or south window of his automobile was partly open. Driving as he did on the extreme right or south shoulder of the highway, the right wheels of appellee's car struck the crossing at some point where the 4-foot timbers extended beyond the 16-foot timbers within the paved portion of the road. When the front wheels of his car crossed the first rail of the track, he felt a sudden "jumping down" and his engine died. He looked both ways for a train but saw none. He started his engine but was unable to move forward. He tried to turn his front wheels to the left and his engine died again. He started the engine a second time for the purpose of backing off the track. During this time his attention was directed to the operation of his car. While the engine was not running he was "grinding on the starter." The right wheels of his automobile were one foot from the edge of the gravel shoulder. He remained on the crossing 12 or 15 seconds before the collision occurred. During that time he was always on the watch for trains "out of the tail of my eye." He neither saw nor heard a train until suddenly he discovered the locomotive about 150 feet from his automobile. He tried to escape from his car

but was unable to do so before the locomotive struck him. He had never noticed anything wrong with the crossing before the morning of the accident, except that it might have been a little smoother. His eyesight and hearing were good at the time of the accident, and his automobile was in good mechanical condition.

The train which struck appellee's automobile was a freight train made up of a diesel locomotive and 75 cars, 52 of which were loaded. It approached the crossing at a speed of 40 miles an hour or 60 feet a second. The speed of the train is not in dispute. The operators of the locomotive testified that they saw appellee's automobile approaching the railroad crossing, saw him apply his brakes at some distance from the crossing when he was not in a position of danger, and saw his automobile skid into the train, striking the pilot of the locomotive. They testified that the bell on the locomotive was ringing constantly as the train approached the crossing and was still ringing after the train had stopped, that the crossing alarm was given by sounding the whistle on the locomotive, and that it was impossible to stop the train after they discovered that appellee was unable to stop his automobile before colliding with the train. They also testified that it was impossible to stop the train in less than 800 feet and that a stop was made in that distance. Disinterested witnesses testified that the whistle on the locomotive was sounded as the train approached the crossing. A witness for appellant testified that no repairs to the crossing had been made within five years. There was no evidence that the highway was heavily traveled or that other collisions or accidents had occurred at the crossing. Residents of the vicinity who crossed the railroad tracks regularly at the point where the accident occurred had experienced no difficulty because of the condition of the crossing.

The court submitted to the jury the question of the wanton conduct of appellant in a charge which permitted the jury to find for appellee if the jury believed from the evidence either "that defendant knowingly maintained the crossing in a defective condition, and knew that such condition threat-

ened danger to motorists using the public road where it crossed over defendant's tracks, and that defendant was thereby guilty of willfulness or wantonness," directly causing plaintiff's injury; or, if the jury found that appellee's automobile "became stalled on defendant's tracks while defendant's train was approaching, and was then in a position of imminent peril," and "that the persons operating defendant's locomotive either saw, or by the exercise of ordinary care to keep a lookout would have seen plaintiff's automobile in such position of imminent peril in time for them, by the exercise of ordinary care, with the means and appliances at hand, to have slackened the speed of the train, or given timely warning with the signaling devices on the locomotive, and thereby have avoided the collision," and that "such failure on the part of the defendant's servants constituted willfulness or wantonness" directly causing plaintiff's injury; and on either alternative, despite appellee's contributory negligence.

On the evidence in this case this charge was reversible error. Proof of the violation of a statute or ordinance is proof of negligence but not of wantonness. Bartolucci v. Falleti, 382 Ill. 168, 46 N.E.2d 980, 984; Provenzano v. Illinois Central R. Co., supra. Proof that appellant violated Illinois law concerning the construction and maintenance of the crossing or proof that it violated the law of the State with reference to sounding the crossing alarm is not sufficient to take to the jury the issue of wanton conduct in the situation shown by the evidence in this case.

The crossing where the accident occurred was in the open country. The highway itself was a secondary road, and there is no evidence that it was heavily traveled. The paved portion of the road, the part usually traveled by motorists on a highway, was constructed and maintained in fair compliance with the statute. The statute in question does not in terms provide that the crossing shall be maintained on a level with the rails to the very outer edges of the shoulders of the highway where it crosses the railroad tracks. The rock shoulders of the crossing sloped as did the shoulders of the highway. The railroad was not re-

sponsible for the icy condition of the highway resulting from snow and sleet which had fallen the night before the morning of the accident. The crossing was not inherently dangerous to motorists. The view of travelers on the highway of approaching trains was not obstructed, and there was nothing in the vicinity of the crossing to distract the attention of travelers or to hinder them in hearing or seeing trains approaching the crossing. There is no proof of prior collisions between travelers on the highway and appellant's trains or any evidence to show that any traveler on the highway had experienced difficulty at the crossing because of the condition in which it was constructed and maintained. Appellee had never noticed any serious defects in the crossing in the three months in which he had used it, nor had residents in the neighborhood who had driven over the crossing for many years. Conceding that the evidence established appellant's failure in maintenance of the crossing in compliance with the law, the failure establishes nothing more than appellant's negligence. The facts in this case distinguish it from cases like Baltimore & O. R. Co. v. Felgenhauer and Brown v. Illinois Terminal Co., supra. See Gately v. Chicago & E. I. R. Co., supra.

The second ground on which the jury was permitted to find wantonness on the part of appellant is open to the criticism that it permits a finding that appellant failed to sound the statutory crossing warning. In many Illinois decisions it is held that the testimony of a witness that he heard no locomotive bell or whistle before a crossing accident is merely negative in character and raises no issue of fact for the jury. See Provenzano v. Illinois Central R. Co., supra; Robins v. Pitcairn et al., supra; Allen v. Pennsylvania R. Co., 7 Cir., 120 F.2d 63; Trumbo v. Chicago, B. & Q. R. Co., 389 Ill. 213, 59 N.E. 2d 92; Carrell v. New York Central R. Co., supra. The jury could not base a finding of wantonness upon any failure to sound the crossing alarm when there was no evidence that the alarm was not sounded. There is no evidence to support a finding that the enginemen intentionally

failed to stop the train before striking appellee, or that they failed through recklessness, as distinguished from ordinary care, to discover his peril in time to avoid the collision. There is no evidence to show that a freight train of 75 cars moving at a speed of 40 miles an hour or 60 feet a second could have been stopped or its speed sufficiently decreased in time to avoid the collision.

■ There is authority for the rule that the sufficiency of the evidence in a negligence case removed to a Federal court because of diversity of citizenship is a matter of substantive law governed by the law of the State in which the accident occurred. Gutierrez et al. v. Public Service Interstate Transp. Co., 2 Cir., 168 F.2d 678. But, in any event, the rule in this circuit on negative evidence is the same as that in Illinois, at least in cases where, as here, the motorist who did not hear the crossing alarm had his attention directed to other matters or his hearing ability decreased by other noises, and where there was independent positive evidence to the contrary. Appellee admits that while his automobile was stalled on the track he "directed my attention to getting off the track," and that when his motor was not running he was "grinding on the starter." Chicago & E. I. Ry. Co. v. Sellars, 8 Cir., 5 F.2d 31, 33; Chicago & N. W. R. Co., v. Garwood, 8 Cir., 167 F.2d 848, 851.

■ We have found no Illinois case in which a finding of wanton conduct was sustained on evidence showing the operation of the train at an excessive speed or a failure to sound the crossing alarm, or both, although in violation of law; or in failing to maintain a crossing in compliance with the statute. In the Illinois cases involving crossing accidents in which a finding of a jury on wanton conduct has been sustained, there was, in addition to a' showing of the conditions just mentioned, other evidence to show that the crossing was peculiarly hazardous and that the operators of the train approaching at an excessive rate of speed without sounding the crossing alarm knew or should have known of the dangerous conditions existing at the

crossing, so that the jury was justified in finding on the whole evidence the necessary knowledge of danger to others and conscious disregard of the consequences. Compare Gately v. Chicago & E. I. R. Co., supra, 138 F.2d at page 227. The evidence in this case, in our opinion, does not meet the requirements of Illinois law for the submission of an issue of wanton conduct to the jury.

■ The conclusion just reached leaves for consideration appellant's contention that the evidence in this case conclusively established the contributory negligence of appellee as the proximate cause of his injury. The controlling principle on this question is stated in Greenwald v. Baltimore & O. R. Co., 332 Ill. 627, 164 N.E. 142, 144.

"The rule has long been settled in this state that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track, but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence.' Graham v. Hagmann, 270 Ill. 252, 110 N.E. 337; Lake Shore & Michigan Southern Railroad Co. v. Hart, 87 Ill. 529.; Chicago, Burlington & Quincy Railroad Co.' v. Damerell, 81 Ill. 450; Toledo, Wabash & Western Railway Co. v. Jones, 76 Ill. 311.

"One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train

when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. Schlauder v. Chicago & Southern Traction Co., 253 Ill. 154, 97 N.E. 233.

"The question of due care on the part of a plaintiff is a question for the jury when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care; but where the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of plaintiff, the trial court is justified in instructing the jury to return a verdict for defendant."

And in Grubb v. Illinois Terminal Co., 366 Ill. 330, 8 N.E.2d 934, 938, it is said: "The settled rule in this state is that a person about to cross a dangerous place has the duty of approaching it with care commensurate with the known danger, and failure to use ordinary precaution to protect oneself from injury, while driving over a known dangerous place is, by the general knowledge and experience of mankind, condemned as negligence."

In the later case of Carrell v. New York Central R. Co. (November 1943), supra, 52 N.E.2d at page 204, the court wrote: "One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing the railroad track upon the assumption that a bell will be rung or a whistle sounded. No one can assume there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law considers obnoxious a contention to the effect that a person looked but did not see a train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it."

And see Gately v. Chicago & E. I. R. Co., supra, 138 F.2d at page 225; Nelson v. Chicago, M. St. P. & P. R. Co., 7 Cir., 62 F.2d 1053, 1054; Allen v. Pennsylvania R. Co., supra; Soule v. Chicago & N. W. R. Co., 7 Cir., 175 F.2d 424.

■ If the risk to appellee was increased by the rough condition of the crossing or by the presence of snow and ice, neither circumstance relieved appellee from the duty to look and listen for approaching trains, but only made that duty more imperative, since he was bound to exercise care for his own safety commensurate with the situation in which he found himself. Carrell v. New York Central R. Co., supra.

There was no implied invitation from appellant to cross the tracks as was the case in Surdyk v. Indiana Harbor Belt R. Co., 7 Cir., 148 F.2d 795, 798; and in Baltimore & O. R. Co. v. Felgenhauer, supra.

■ Giving the appellee the benefit of all reasonable inferences favorable to him that may be drawn from all the evidence in the case, the facts are that appellee's car became stalled on the crossing because of the failure of appellant to maintain the crossing as required by law or because defects in the crossing were obscured by snow and ice which had fallen the night before. Appellee knew that trains were likely to be approaching the crossing at the time his car became stalled upon it. If one is in a position of danger crossing a railroad, he is certainly in a more perilous position when he is stalled upon it. Appellee knew that his view of an approaching train was limited to 650 or 700 feet, and that the view of the enginemen on the train of the crossing and appellee's car was limited to the same distance. In this situation he knew that his safety depended upon looking and listening for approaching trains. Certainly a motorist stalled on a railroad track, where from past experience he knows a train is liable to approach at any moment, does not exercise care commensurate with his perilous situation unless he looks and listens for trains as often and as constantly as looking and listening are necessary to enable him to avoid injury. It is true that appellee says that he listened and did not hear and that he looked out of the "tail" of his eye and did not see. Under the rule prevailing in Illinois the proof is that the train sounded the crossing warning, and no inference can be indulged that had ap-

pellee looked and listened he would not have seen or heard the train in time to have removed himself to a place of safety. The duty on appellee was just as imperative as was the duty of the enginemen, and under Illinois law, controlling here, the burden was on appellee to prove his freedom from contributory negligence. Soule v. Chicago & N. W. R. Co., supra, 175 F.2d at page 426.

Even if it could be conceded from all the evidence in this record that the conduct of the operators of the locomotive was willful and wanton, appellee's disregard for his own safety was just as wanton and just as willful. The general rule is that while contributory negligence in the sense of failing to exercise ordinary care is not a defense to an action charging wanton conduct on the part of defendant, the wanton or reckless disregard by the plaintiff for his own safety bars recovery against the defendant whose wanton conduct contributed to cause the injury. Restatement of Torts, Vol. 2, § 503. The rule is in effect in Illinois. Schneiderman v. Interstate Transit Lines, Inc., supra.

The conclusion is inescapable that the proximate cause of appellee's unfortunate accident was his negligence in remaining in a position of known danger when, by the exercise of care commensurate with the danger which he was bound to know and understand, his injury would have been avoided.

The judgment of the District Court is reversed, and this case is remanded with directions to dismiss the action.

JOHNSEN, Circuit Judge (dissenting in part).

My concern is with the holding of the majority opinion that the failure of the driver to get out of his stalled car and to a position of safety before he was struck by the train was contributory negligence as a matter of law, since it would have been possible for him to have seen and heard in time to have averted the injury, if he had sufficiently applied his faculties to that end.

The opinion thus declares a motorist in Illinois, whose vehicle has become stalled upon a railroad crossing, subject to the same absolute standard of conduct that is applicable in that State to a motorist who is simply crossing a track, with no problem on his hands except that of guiding his vehicle over the crossing. The Illinois cases relied upon as supporting the legal absolutism laid down are all approaching-vehicle cases and not stalled-car situations. Since there is no express holding by the Illinois courts upon the proposition, the view taken is of course simply an appraisal of what the courts of that State would hold in stalled-car situations. I am unable to persuade myself that this appraisal of the majority is sound.

It is fundamental that no absolutism should be laid down by any court for human conduct, except where it is possible to say with natural or experiential certainty that the prescription made is what the ordinary prudent man would or would not have done in such a situation and so represents what all men must or must not do.

I do not believe it to be a legal certainty that the ordinary prudent motorist, who is caught in the unexpected and uncomfortable situation of being stalled upon a railroad crossing, normally will or even naturally can apply his faculties to the task of watching and listening for trains in the same full free measure as where he is simply approaching a track in untroubled fashion and proceeding over it. I should rather suspect that the instinctive reaction of normal persons generally in such a situation would be to try to get their automobile started again. And I am not prepared to hold as a matter of law that such a motorist has no margin of right to give a thought to the safety of his property, in addition to that of himself, and even perhaps to entertain a little concern about preventing a wreck and the possibility of injury to those upon an engine or train that might approach.

But if a stalled motorist cannot in the least escape the effect of applying his faculties to anything except saving himself from injury, then he may not attempt to get his car off the track, either to preserve it or

to prevent the possibility of injury to others, except at his own risk, since any wrestling with his starter and gears will necessarily absorb and divert some of his faculties. If he is entitled to make any such effort at all, then such variations in absorption and diversion of faculties manifestly will be involved as to make impossible the application of any absolute rule of conduct and to compel that the line between over-application and under-attention as a matter of human action in the particular situation be left to a jury to draw.

Common sense and normal human action seem to me to dictate that a motorist has some degree of right to try to get his stalled-car off the track. The question of how far he should be permitted to go is not soundly answered by saying that he must never get hurt. How far he properly may go, like any other situation in life where relative factors are involved, cannot soundly be judged on the basis of the result alone but can only fairly be arrived at by a balancing of all the circumstances in their setting.

For these reasons, I think the question of contributory negligence in a general stalled-car situation is not one of law but of fact. And this, I am satisfied, is the generally recognized rule. In other states, where the same strict standard is applied as in Illinois, of holding a motorist guilty of contributory negligence as a matter of law when he is simply crossing a track, where he could have looked and listened and would have seen and heard, the question of contributory negligence in stalled-car situations has not been treated as being within the operation of this rule but as being generally a matter for the jury. Among these are Broad v. Pennsylvania R. Co., 357 Pa. 478, 55 A.2d 359; Marfilues v. Philadelphia & R. R. Co., 227 Pa. 281, 75 A. 1072; Moore v. Atlantic Coast Line R. Co., 201 N.C. 26, 158 S.E. 556; Sutter v. Pere Marquette Ry. Co., 230 Mich. 489, 202 N.W. 967; Schaaf v. Coen, 131 Ohio St. 279, 2 N.E.2d 605. I do not believe that the Illinois courts would any more apply the rule of approaching-vehicle cases to stalled-car situations than has been done in these other states.

I think the case should be remanded for a new trial generally on the issue of ordinary negligence and plaintiff's contributory negligence in relation thereto.